WILLIAM LEE ANDREWS III
Chairman

Attorney and Counselor at Law

Admitted in
Virginia and Dominica

OFFICES

VIRGINIA WORLDWIDE GROUP, LLC

5680 CASTLE VIEW
ROANOKE, VA 24018

Telephone
(540) 484-3188

Facsimile
(540) 904-6993

Email
wlaiiitxlw@aol.com

April 5, 2013

To: Milwaukee McPherson LLC (Carlos Meza)
In re: Commitment Letter

On information provided to the undersigned, pursuant to agreement between CARCO, LLC and the client, Milwaukee McPherson LLC is depositing USD $400,000.00 in consideration of a profit return of USD $50,000,000.00 within Thirty Five International Banking days (35-day) period of time.

Below will describe as follow:

*Process:*

1. Milwaukee McPherson LLC will review and sign the agreement on April 5, 2013
2. Milwaukee McPherson LLC will deposit $400,000 USD to Attorney William Andrews on April 5, 2013
3. Copy of Wire Transfer or Deposit will be sent over to Carco, LLC at carcoinfo@gmail.com or wlaiiitxlw@aol.com
4. Funds will then be deposit to Provider on April 8, 2013
5. Milwaukee McPherson LLC provides banking coordinates on where to send his funds.

*Length of time:*

Monetizing will take up to (35-Banking days) to complete. Within the first 7- 10 business days Client will receive first pay out of 3%, followed by the final tranche on or before the (35 banking days) for the difference owed.

*Payout Schedule:*

6 Million USD APRIL 22, 2013 (On or before date)
44 Million USD May 20-24 2013 (On or before date)

Sincerely,

William L. Andrews III
Chairman
Virginia Worldwide Group, LLC

EXHIBIT
DEFENSE
1
tabbies

OFFICES

WILLIAM LEE ANDREWS III
Chairman

VIRGINIA WORLDWIDE GROUP, LLC

Telephone
(540) 484-3188

Facsimile
(540) 904-6993

Attorney and Counselor at Law

Admitted in
Virginia and Dominica

5680 CASTLE VIEW
ROANOKE, VA 24018

http://www.virginiaworldwidegroup.com
[Private access only]

Email
wlaliibdw@aol.com

April 24, 2013

To:     Milwaukee McPherson LLC (Carlos Meza) ("Client")

In re:   Transaction with respect to Provider: CARCO LLC/$USD160,000.00

1.  If CARCO LLC does not perform within fifteen (15) days then CARCO LLC will refund the
referenced $US160,000.00 back to Virginia Worldwide Group, LLC to, in turn, be returned to Client.

2.  Said funds shall remain in abeyance until the transaction has been processed, verified, and approved by
both parties.  Once Client approves the transaction, the funds will be wire transferred to pay for the fees
for the transaction at hand.

3.  CARCO LLC has seventy-two (72) hours to refund the money back to the Client if the transaction is
canceled.

Sincerely,

William Lee Andrews III
Chairman
Virginia Worldwide Group, LLC

EXHIBIT
DEFENSE
2
tabbies

2/17/2018                                    Gmail - Resolution

 Gmail                                    Novoa Incmar <novoa.inc.1@gmail.com>

## Resolution
1 message

**Novoa** <novoa.inc.1@gmail.com>                         Wed, Mar 12, 2014 at 6:48 PM
To: "gelfond72@gmail.com" <gelfond72@gmail.com>, Vanessa Szymanski Larry S Girl <v_szymanski@yahoo.com>,
dirrfinancial@gmail.com

Larry,

I have been very patient with your ongoing issues which you were keeping me informed.

However, I never want to make anyone's live uncomfortable like you have to me.

Here are some of your agreements or promises to me:

I'm going to California to get my transaction done and the $150,000.00 invested with Jennifer should be paid out every week. To this day, nothing has happened and you have decided now to ignore all my calls and texts.

You have continously said, "Peter is working on it". So far, nothing has come from it.

You have received all my money and to this day, I have nothing from you other than your false expectations. The transaction should only take 60 days and it has been almost a year.

You have several other individuals, as well, except I am not one of them that has been creating trouble for you. One of them has gone to the FBI on the same promise given to me. You need to call me very quickly as my patience is coming to an end. I can wait if you communicate, but you have decided not to. If I don't hear anything from you by Friday, I have no choice other than to protect myself just like you are doing now.

I consider you a friend and I have been protecting you all this time. You told William you were very sick in order to avoid dealing with the issue when I know you were fine. I can go on and on with all issues. I strongly suggest you call me as my family has been affected in a huge manner and I don't want your family to feel the same. I don't want to argue with you. I want to find a solution to the mess you got me involved in. As a friend, I'm imploring you, please call me. Communication is crucial and you can stop the big mess that is about to begin.



EXHIBIT
DEFENSE 3
3

2/17/2018                                                Gmail - Call

M Gmail                                                  Novoa Incmar <novoa.inc.1@gmail.com>

## Call
3 messages

**Novoa** <novoa.inc.1@gmail.com>                       Wed, Mar 5, 2014 at 11:15 PM
To: lawrence Gelfond <gelfond72@gmail.com>

Are the issues being resolve?

Please advised and use Dennis telephone.

Thanks

**lawrence Gelfond** <gelfond72@gmail.com>              Thu, Mar 6, 2014 at 11:41 AM
To: Novoa <novoa.inc.1@gmail.com>

i am getting a new phone in a few hours. Everything is fine i am waiting to find out whats going on, i will let you know
when i know.
[Quoted text hidden]

**Novoa** <novoa.inc.1@gmail.com>                        Thu, Mar 6, 2014 at 10:44 PM
To: lawrence Gelfond <gelfond72@gmail.com>

You need to let me know where we stand as of tomorrow please.

Anything on Peter?

I really don't appreciate you not picking up your phone.   As a courtesy you should call me. Ignoring my calls is not cool.

I know you are doing your best and you have a lot of pressure as I do.
[Quoted text hidden]

EXHIBIT
DEFENSE
4

7/25/2017 

IMG_3666.PNG

 ●●○○○ AT&T 📶    5:46 PM    57% 🔋 

‹    **Spencer**    ⓘ

## Scott Spencer
## Nicole Horn

Mar 6, 2012, 8:27 AM

Just checking in this morning to make sure you got our names last night for the flights



Thanks, let me know how your bank / crane

   


**EXHIBIT**
DEFENSE
5
PAGE 1

7/25/2017                                    IMG_3667.PNG

 ●●○○○ AT&T 📶          5:46 PM          57% 🔋 

‹          Spencer          ⓘ



Thanks, let me know how your bank / crane meeting goes

Mar 6, 2012, 2:56 PM

Any luck with the tickets?  He said he could only hold them until 6:00


I'll call them

Mar 6, 2012, 3:06 PM

                      

DEFENSE
5
PAGE 2

7/25/2017                                    IMG_3653.PNG

●●○○○ AT&T 🔆          4:55 PM          69% 🔋

‹          **Spencer**          

I'll have to make arrangements

K



He could leave tomorrow

Mar 14, 2012, 8:00 AM

Carlos call me when you have a minute I have a few questions for you

            



EXHIBIT
DEFENSE
6
PAGE 1

7/25/2017                                   IMG_3652.PNG

●●○○○ AT&T 🤶      4:55 PM       🗲 69% ▬▬

< 　　　　Spencer 　　　　ⓘ

Carlos would you talk to tom about the g n t he's been in communication with the guys from california and would you talk to doug about seeing the crane t

om's phone number is 7757500612 Doug's 2506189833. I'm just getting on the plane. I'll be on

EXHIBIT
DEFENSE 6
PAGE 2    1/1

7/25/2017
IMG_3651.PNG

 ●●○○○ AT&T 📶   4:55 PM   69% 🔋



‹ **Spencer** 

Can Doug drive to
wisconsin and
look at the crane

 I'll have to make
arrangements

K

When

He could leave
tomorrow

Mar 14, 2012, 8:00 AM

Carlos call me

     

EXHIBIT
DEFENSE
6
PAGE 3   1/1

7/25/2017                                           IMG_3648.PNG

 ●○○○○ AT&T 🔶          4:54 PM          🔷 70% ▭▭▭

‹          **Spencer**          ⓘ

> ### Chilis at 12:15

Chili's on
72 ,south of the
mall at 12:15. See
you there

Mar 21, 2012, 11:23 AM

~~Carlos I have bob~~
~~talking to usbank.~~
~~I would like to~~
~~know more about~~
~~Alan's deal call~~
~~me when you get~~
~~an opportunity.~~

                           

https://mall.google.com/mail/u/0/#inbox/15d7b798f6dd95cd?projector=1

EXHIBIT
DEFENSE
7
tabbies

7/25/2017                                          IMG_3637.PNG

 ●●○○○ AT&T 🛜          4:49 PM              71% ▭ 

‹              **Spencer**              ⓘ

I'll be back at
work at 3 o clock



Jun 11, 2012, 4:43 PM

we have the offer
in on the trailer
park, I should
have a copy of it
this evening. if it's
accepted I'd like
to get together
with you
tomorrow.

            

https://mail.google.com/mail/u/0/#inbox/15d7bf30022483cc?projector=1



EXHIBIT
DEFENSE
8

7/25/2017                                          IMG_3635.PNG

 ●●○○○ AT&T 📶          4:49 PM          ⁕ 72% 🔋

‹          **Spencer**          

see you in 10

> Send all info ASAP please

will do

Jun 12, 2012, 7:36 PM

> What's the adress of property

14 lake marion road carpentersville illinois 60110

: that's Marian

         

EXHIBIT
DEFENSE
9
PAGE 1

7/25/2017                                   IMG_3634.PNG

 ●●○○○ AT&T 🛜          4:49 PM          72% 🔋          

‹          **Spencer**          ⓘ

Cook county

Kane, I have an appraisal from 2006 if you think that would help

Is that the latest?

no I have a new 1 from april

That one

Right, I'll have it in the morning

Ok

            

EXHIBIT
DEFENSE
9
PAGE 2   1/1

7/25/2017  IMG_3633.PNG

●●○○○ AT&T 📶 4:49 PM 72% 🔋

‹ **Spencer** 

Is the property on the name of Llc ?

no my dad and I personally

you should have the deed in your email

Do you pin #

I'll have it for you in 10 minutes

0315200030

   

EXHIBIT
DEFENSE
9
PAGE 3  1/1

7/25/2017

IMG_3632.PNG

 ●●○○○ AT&T 📶    4:49 PM    72% 🔋

 ‹    **Spencer**     ⓘ

call me when you
get a chance

Jun 13, 2012, 2:44 PM



Need wire
instructions

For Andy

scott spencer
chase jp morgan
071000013 my
account number
465671704

Jun 14, 2012, 6:15 AM

   

https://mail.google.com/mail/u/0/#inbox/15d7bf50ad44e799?projector=1

EXHIBIT
DEFENSE
9
PAGE 4   1/1

7/25/2017  IMG_3628.PNG

< **Spencer** 

Text Message
Jun 19, 2012, 11:51 AM

Call me when we can talk about apartment management.

Jun 25, 2012, 7:46 AM

I'm home for the next 2 days can we have lunch ?

Out of town until wed

Jun 26, 2012, 7:48 PM

   



EXHIBIT
DEFENSE
10

7/25/2017 IMG_3623.PNG

 ●●○○○ AT&T 📶  4:47 PM  72% 🔋

‹ **Spencer** 

Need the wire number and confirmation.

They have not received anything yet.

Jul 20, 2012, 8:14 AM

I got some information about the title work in north dakota give me a call when you get a chance

   

https://mail.google.com/mail/u/0/#inbox/15d7bf9044cc9906?projector=1


EXHIBIT
DEFENSE
11
PAGE 1

IMG_3622.PNG

 ●●○○○ AT&T 📶    4:47 PM    72% 🔋



‹    **Spencer**    ⓘ

north dakota give
me a call when
you get a chance

Jul 20, 2012, 12:52 PM

Are u available
now?

Where are u?

Jul 21, 2012, 3:03 PM

I'll be available
until 5 o'clock this
evening

Give me a call

      

DEFENSE
EXHIBIT
11
PAGE 2

7/25/2017          IMG_3619.PNG

 

●●○○○ AT&T 📶     4:47 PM     73% 🔋

<     **Spencer**     ⓘ

Jul 24, 2012, 3:07 PM

We finally heard from the mobile park owner give me a call

Jul 26, 2012, 12:52 PM

Call me when you have time to talk about the trailer park in our counter offer

   

EXHIBIT
DEFENSE
12
tabbies®

7/25/2017

IMG_3616.PNG

 ●●○○○ AT&T 🛜     4:44 PM     73% ▭

‹ **Spencer** 

Did the wire come through?



Yes

It went out already

K

Aug 22, 2012, 5:03 PM



Call me

Need the final number on 160 acres

   



EXHIBIT

DEFENSE
13

7/25/2017                                                    IMG_3612.PNG



●●○○○ AT&T 📶          4:43 PM          74% 🔋

Sep 19, 2012, 8:33 AM

‹                    **Spencer**                    ⓘ

Any word from
the investors from
Salt Lake City?

Sep 19, 2012, 1:32 PM

Did you get a
chance to look at
the financials
from the trailer
park?

Sep 21, 2012, 9:44 AM

Conference call?

Sep 21, 2012, 9:19 AM

                      



EXHIBIT
DEFENSE
14
tabbies

/17/2018                                          Punch list - novoa.inc.1@gmail.com - Gmail

**Gmail**                                                                                         More

COMPOSE                      Punch list        inbox    x

Inbox (1)
Starred                       Scott Spencer <sspencer@performancestamping.com>
Important                     to me
Sent Mail
**Drafts (85)**               Carlos,

Categories                    Here are our open issues;
    **Social (6)**

    Novoa          +          1.    80 acres, i told Doug when he gets back Williston on Saturday, to talk to the farmer t
                                    some ideas in that regard. Doug's gut feel is that he would be willing to take about $12,00

                              2.    Crane, i need to know when the crane could be available, the cost if we take over th

                              3.    Alan the Arizona guy, i would like an introduction and would be happy to travel to Ari

                              4.    i'm attaching the 44 acre plot and instructions, along with their proposed deal (also a
                                    Tom;
                                    "Attached is the most recent drawings for your excavator. The contours are in 1' incremen
                                    not be an issue. The sewer line can be tied into on the west side of the property. The line

                                    There are two options to bring water to the site.

                              1.    You can bring it approx 1 mile along the existing sewer easement. This is digging in

                              2.    You can tap off the WAS line under HWY 2. This means you will bore under HWY 2

No Hangouts contacts          5.    Moroni's local excavating numbers for the 28 single family units and the two apartme
    Find someone
                                    Call me if you have any questions,
                                    SS

                              **3 Attachments**


SUBLOT3-CONC..


SUBLOT3-CONC..


Wyland Joint


EXHIBIT
DEFENSE
15

## LIMITED LIABILITY COMPANY AUTHORIZATION RESOLUTION

By: PERFORMANCE CRANE AND EXCAVATING LLC

Stockman Bank
700 Main Street P O Box 250
Miles City, Montana 59301

Referred to in this document as "Financial Institution"

20 LAKE MARION ROAD
CARPENTERSVILLE, IL 60110
Referred to in this document as "Limited Liability Company"

I, SCOTT SPENCER , certify that I am a Manager or Designated Member of the above named Limited Liability Company organized under the laws of NORTH DAKOTA , Federal Employer I.D. Number 04-6921737 engaged in business under the trade name of PERFORMANCE CRANE & EXCAVATING LLC , and that the resolutions on this document are a correct copy of the resolutions adopted at a meeting of all members of the Limited Liability Company or the person or persons designated by the members of the Limited Liability Company to manage the Limited Liability Company as provided in the articles of organization or an operating agreement, duly and properly called and held on 08/13/2012 (date) These resolutions appear in the minutes of this meeting and have not been rescinded or modified.

**AGENTS** Any Agent listed below, subject to any written limitations, is authorized to exercise the powers granted as indicated below:

| | Name and Title or Position | Signature | Facsimile Signature (if used) |
|---|---|---|---|
| A. | SCOTT VAUGHN SPENCER-MANAGER/MEMBER/SIGNER | x | x |
| B. | CARLOS MEZA-MEMBER | x | x |
| C. | HOLIDAY DEVELOPERS LLC-MEMBER-THOMAS HOLIDAY | x | x |
| D. | | x | x |
| E. | | x | x |
| F. | | x | x |

**POWERS GRANTED** (Attach one or more Agents to each power by placing the letter corresponding to their name in the area before each power. Following each power indicate the number of Agent signatures required to exercise the power.)

| Indicate A, B, C, D, E and/or F | | Description of Power | Indicate number of signatures required |
|---|---|---|---|
| N/A | (1) | Exercise all of the powers listed in this resolution. | |
| A, B, C | (2) | Open any deposit or share account(s) in the name of the Limited Liability Company | 1 |
| A | (3) | Endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit with this Financial Institution | 1 |
| N/A | (4) | Borrow money on behalf and in the name of the Limited Liability Company, sign, execute and deliver promissory notes or other evidences of indebtedness | |
| N/A | (5) | Endorse, assign, transfer, mortgage or pledge bills receivable, warehouse receipts, bills of lading, stocks, bonds, real estate or other property now owned or hereafter owned or acquired by the Limited Liability Company as security for sums borrowed, and to discount the same, unconditionally guarantee payment of all bills received, negotiated or discounted and to waive demand, presentment, protest, notice of protest and notice of non-payment. | |
| A, B, C | (6) | Enter into a written lease for the purpose of renting, maintaining, accessing and terminating a Safe Deposit Box in this Financial Institution | 1 |
| A, B, C | (7) | Other May authorize signers/signers on deposit accounts opened by them whereas such agents/signers will have the same powers to transact business on specific accounts as in (3) above | 1 |

**LIMITATIONS ON POWERS** The following are the Limited Liability Company's express limitations on the powers granted under this resolution.

**EFFECT ON PREVIOUS RESOLUTIONS** This resolution supersedes resolution dated All . If not completed, all resolutions remain in effect

**CERTIFICATION OF AUTHORITY**
I further certify that the Managers or Designated Members of the Limited Liability Company have, and at the time of adoption of this resolution had, full power and lawful authority to adopt the resolutions on page 2 and to confer the powers granted above to the persons named who have full power and lawful authority to exercise the same. (Apply seal below where appropriate.)

In Witness Whereof, I have subscribed my name to this document and affixed the seal, if any, of the Limited Liability Company on 08/13/2012 (date).

Attest by One Other Manager or Designated Member    Manager or Designated Member

**EXHIBIT**
DEFENSE
16

(The Above Space for Recorder's Use Only)

③ GNT #12 - 0404

## MORTGAGE

**THIS MORTGAGE,** ("Security Instrument") is made effective as of the 17th day of October, 2012, between **SCOTT V. SPENCER AND EDWARD SPENCER** (collectively, the "Mortgagor" or "Borrower"), having an address at 20 Lake Marian Rd., Carpentersville, IL 60110, and **ALSJ, INC.,** an IL corporation ("Mortgagee" or "Lender"), whose address is 6603 W. Beckwith, Morton Grove, IL 60053. This Mortgage is security for a loan made by Lender to the Borrower in the principal sum of **FOUR HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS** (U.S. **$450,000.00**), with interest accruing thereon (the "Indebtedness").

## R E C I T A L S

NOW THEREFORE, for valuable consideration, the receipt and sufficiency of which is acknowledged, Mortgagor DOES HEREBY COLLATERALLY ASSIGN, MORTGAGE, and WARRANT unto Mortgagee, its heirs, successors and assigns, the real estate described in Exhibit "A", attached hereto and made a part hereof, which together with the property mentioned in the next five (5) succeeding paragraphs hereto, shall be referred to as the "Real Property";

1



EXHIBIT
DEFENSE
17

TOGETHER with all right, title and interest of Mortgagor, including any after-acquired title or revisions, in and to the beds of the ways, streets, avenues and alleys adjoining the Real Property;

TOGETHER with all and singular the tenements, hereditaments, easements, appurtenances, passages, waters, water courses, mineral rights, water rights, riparian rights, other rights, liberties and privileges thereof or in any other claim at law or in equity as well as any after-acquired title, franchise or license and reversions and remainder and remainders hereof;

TOGETHER with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, furnishings and equipment now or hereafter owned by Mortgagor and attached to or forming a part of or used in connection with the Real Property and all renewals, replacements and substitutions thereof or substitutions therefore, whether or not attached to said building(s), it being mutually agreed that all of the aforesaid property owned by Mortgagor and placed on the Real Property shall, so far as permitted by law, be deemed to be fixtures, a part of the Real Property, and security for the Indebtedness;

TOGETHER with all awards and other compensation heretofore or hereafter to be made to the present and all subsequent owners of the Real Property for any taking by eminent domain, either permanent or temporary, of all or any part of the Real Property or any easement or appurtenances thereof, including severance and consequential damage and change in grade of streets, which said awards and compensation are hereby assigned to Mortgagee.

TOGETHER with all leases or occupancy agreements now or hereafter entered into of the Real Property, or any portion thereof, and all rents, profits, revenues, earnings and royalties therefrom, including but not limited to, cash, letters of credit or securities deposited thereunder to secure performance by the tenants or occupants of their obligations thereunder whether such cash, letters of credit or securities are to be held until the expiration of the terms of such leases or occupancy agreements are applied to one or more of the installments of rent coming due prior to the expiration of such terms including, without limitation, the right to receive and collect rents thereunder.

TO HAVE AND TO HOLD the Real Property, and all other above-described property and rights, unto Mortgagee, her heirs, successors and assigns, forever; Mortgagor hereby RELEASING AND WAIVING all rights under and all virtue of the homestead exemption laws of the State of Illinois.

PROVIDED, NEVERTHELESS, that if Mortgagor shall pay when due the Indebtedness and duly and timely perform and observe all of the terms, provisions,

2

covenants and agreements herein provided to be performed and observed by Mortgagor, then this Mortgage shall cease and become void and of no effect; but otherwise this Mortgage will remain in full force and effect.

## MORTGAGOR COVENANTS AND AGREES AS FOLLOWS:

**BORROWER COVENANTS** that "Borrower" is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument concerning real property.

### UNIFORM COVENANTS

1.    <u>Payment of Indebtedness</u>. Mortgagor shall duly and punctually perform and observe all of the terms, provisions, conditions, covenants and agreements to be performed and observed as provided herein; and this Mortgage shall secure the following: (a) the payment of the Indebtedness, Prepayment, and Late Charges; and (b) the performance and observance of all of the covenants, and provisions in this Mortgage, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged.

2.    <u>The Debt</u>. This Mortgage secures the following (the "Debt"):

The indebtedness is evidenced by a Secured Promissory Note, (the "Promissory Note") executed by  Scott V. Spencer and Edward Spencer, jointly and severally (collectively, the "Maker") to ALSJ, INC., an IL corporation ( "Holder"), effective as of October 17, 2012 (and which matures on January 17, 2013), in the principal amount of FOUR HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS (U.S. $450,000.00) and any extensions, modifications, renewals or refinancing thereof, with an interest rate of 36% per annum, and which said Note provides for payments of interest monthly and at maturity.

3. _Funds for Taxes and Insurance_. Subject to applicable law or to a written waiver by Lender, Borrower shall pay Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property: (b) yearly leasehold payments or ground rents on the Property. if any: (e) yearly hazard or property insurance premiums: (d) yearly flood insurance premiums, if any: (e) yearly mortgage insurance premiums, if any; and (any sums payable by Borrower to Lender in accordance with the provisions of paragraph 9, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items". Lender may, at any time, collect and hold Funds in an amount not to exceed the amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time. 12 U-S.C. Section 2601 er seq- ("RESPA"). unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amounts Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid. Lender shall not be required to pay Borrower any interest or earnings on the Funds, Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument, if the Funds held by Lender exceed the amounts permitted to be held by applicable law. Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing. and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, Lender shall acquire or sell the Property. Lender, prior to the acquisition or sale of the Property shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

4.     Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 2 and 3 shall be applied first to any prepayment charges due under the Note; second, to amounts payable under paragraph 3; third, to interest due; fourth, to principal due; and last, to any late changes due under the Note.

5.     Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 3, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority user this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

6.     Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 8.

5

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall he applied to restoration or repair of the Property damaged. if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 2 and 3 or change the amount of the payments. If the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

7.      Occupancy, Presentation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.    Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, by causing the action or proceeding to be dismissed with a ruling that. in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence, If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

6

8. <u>Protection of Lender's Rights in the Property</u>. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 8, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 8 shall become additional debt of Borrower secured by this Security Instrument, Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

9. <u>Mortgage insurance</u>. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available. Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (it's the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

10. <u>Inspection</u>. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

11. <u>Condemnation</u>. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any

part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall he applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemner offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 day's after the date the notice is given, Lender is authorized to collect and apply the proceeds, at it's option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 2 and 3, and as set forth in the Promissory Note, or change the amount of such payments.

12.       Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security' Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest, Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

13.       Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the

8

successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

14.     Loan Charges. If the loan secured by this Security Instrument is subject to a Law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower, If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

15.     Events of Default. One or more of the following events shall be events of default ("Events of Default"):

      a.     A pre- or post-mortems failure of Mortgagor to punctually pay, any payment due under the terms of the Promissory Note, as and when the same is due and payable;

      b.     If, without the prior written consent of Mortgagee, Mortgagor shall create, effect or consent to or shall suffer or permit (or shall contract for or agree to) any conveyance, sale, assignment, lien, tax lien (for any governmental authority, including the Internal Revenue Service), transfer, or alienation of the Real Property or any part thereof or interest therein, (including without limitation of any beneficial interest), including any leases entered into during the ordinary course of business in each case whether any such conveyance, sale, transfer, lien or alienation is effected directly, indirectly, voluntarily or involuntarily, by operation of law or otherwise;

      c.     The filing of any foreclosure by any person or entity against the Real Property;

d.      Any material misrepresentation made by or on behalf of Mortgagor in this mortgage or the Loan Documents. The Loan Documents are defined as a) the Secured Promissory Note, b) this Mortgage, c) the Assignment of Rents and Leases, and d) any other loan documents and agreements by and between Borrower and Lender and such other instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by the Borrower or any other party to the Lender, including but not limited to a security interest in one or more limited liability companies in which any of the Borrowers have a membership interest.

e.      Breach of any warranty made by or on behalf of Mortgagor in this Mortgage;

f.      The creation of any unpermitted encumbrance upon the Premises or any property of Mortgagor or making of any levy, judicial seizure or attachment thereof or thereon unless the unpermitted encumbrance is the result of Mortgagee's or the Holder's actions;

g.      Any loss, theft, damage or destruction of the property of the Mortgagor not adequately insured;

h.      Appointment of a receiver for any part of the property of Mortgagor, or the making of any assignment for the benefit of creditors by Mortgagor or the initiation of any proceeding under the bankruptcy laws by or against Mortgagor;

i.      So long as any of the Debt remains unpaid, unperformed, unsatisfied, or undischarged, in the event that Mortgagor shall, transfer, convey, assign, alienate, lease, pledge, hypothecate or Mortgage the Premises or any portion thereof or any interest therein, either voluntarily or involuntarily, or enter into a contract to do any of the foregoing, except as specifically permitted hereunder.

j.      The failure of Holder to abide by the terms of any of the Loan Documents (defined in (d) above).

k.      Not paying, when due, any amounts owed to contractors, subcontractors, or materialman for work done or materials furnished to the Premises.

l.      Mortgagee may want Mortgagor to transfer the Property that is collateral for this mortgage into a land trust at Chicago Title Land Trust Company and provide Mortgagee a collateral assignment of

10

beneficial interest in the land trust. Mortgagor's failure to do so, at the request of the Mortgagee, shall be an event of default. (See Section 40).

16.   <u>Default.</u>   If an Event of Default shall occur and Mortgagor shall fail to cure said default within ten (10) days after the Event of Default, the Mortgagee is hereby authorized and empowered, at her option, and without affecting the lien hereby created or the priority of said lien or any right of Mortgagee hereunder to declare, without further notice, all Indebtedness to be immediately due and payable, whether or not such default be thereafter remedied by Mortgagor, and Mortgagee may immediately proceed to foreclose this Mortgage or to exercise any right, power or remedy provided by this Mortgage, the Note, by law or in equity conferred.

17.   <u>Foreclosure.</u>   When the Indebtedness or any part thereof shall become due, whether by acceleration or otherwise, Mortgagee shall have the right to foreclose the lien hereof for the indebtedness or any part thereof. Thereafter, all reasonable expenditures and expenses which may be paid or incurred by or on behalf of Mortgagee for attorney's fees, appraiser's fees, outlays for documentary and expert evidence, stenographer's charges, publication costs and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all such abstracts of title, title searches and which may be had pursuant to such decree, the true conditions of the title to or the value of the Real Property. All expenditures and expenses of the nature mentioned in this paragraph, and such other expenses and fees as may be incurred in the protection of the Real Property and the maintenance of the lien of this Mortgage, including the fees of attorneys employed by Mortgagee in any litigation or proceedings affecting this Mortgage or the Real Property, including probate and bankruptcy proceedings, or in preparation of the commencement or defense of any proceedings or threatened suit or proceedings, shall be deemed additional Indebtedness and shall be immediately due and payable.

18.   <u>Receiver.</u>   Upon, or at any time after, the filing of a complaint to foreclose this Mortgage, the court in which such complaint is filed may appoint a receiver of the Real Property. Such appointment may be made either before or after sale, without regard to solvency or insolvency of Mortgagor at the time of application for such receiver, and without regard to the then value of the Real Property or whether the same shall be the occupied as a homestead or not; and Mortgagee hereunder or any employee or agent thereof may be appointed as such receiver. Such receiver shall have the power to collect the rents, issues and profits of the Real Property during the pendency of such foreclosure suit and, in case of a sale and deficiency, during the full statutory period of redemption, if any, whether there be a redemption or not, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Real Property during the whole of said period.

19.   <u>Proceeds of Foreclosure Sale.</u>   The proceeds of any foreclosure sale of the Real Property shall be distributed and applied in the following order of priority: <u>First,</u>

11

to satisfy in full the indebtedness pursuant to this Mortgage; Second, on account of all costs and expenses incident to the foreclosure proceedings; Third, to all other items which, under the terms hereof, constitute Indebtedness or additional Indebtedness under this Mortgage and the Note, which it secures; and Fourth, to pay a $2,000.00 foreclosure penalty, and any remaining amounts to Mortgagor and its successors and assigns.

20. <u>Waiver</u>. Mortgagor hereby covenants that it will not at any time insist upon or plead, or in any manner whatsoever claim or take advantage of any stay, exemption, extension, or moratorium law now or at any time hereafter in force, nor claim, take or insist upon any benefit or advantage of or from any law now or hereafter in force providing for the valuation or appraisement of the Real Property, or any part thereof, prior to any sale or sales thereof to be made, pursuant to any provisions herein contained, or to any decree, judgment or other of any court of competent jurisdiction; or after such sale or sales claim or exercise any rights under any statute now or hereafter in force to redeem the Real Property so sold, or any part thereof, or relating to the marshalling thereof, upon foreclosure sale or other enforcement hereof. Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of the Mortgage, on their own behalf and on behalf each and any person acquiring any interest in or title to the Real Property subsequent to the date hereof, it being the intent hereof that any and all such rights of redemption of Mortgagor and of all other persons, are and shall be deemed to be hereby waived to the full extent permitted by the provisions of 35 ILCS 5/15-1601, and any statute enacted in replacement or substitution thereof.

21. <u>Further Assurances</u>. Mortgagor will do, acknowledge and deliver all and every further acts, deeds, conveyances, transfer and assurances necessary or proper, in the sole judgment of Mortgagee, for the better assuring, mortgaging, collaterally assigning and confirming unto Mortgagee all property mortgaged hereby or property intended so to be, whether now owned by Mortgagor or hereafter acquired.

22. <u>Assignment by Mortgagee</u>. Notwithstanding any provision herein which is or may appear to be to the contrary, the Mortgagee may assign, negotiate, pledge or otherwise hypothecate all or any portion of this Agreement or grant participation herein or in any of its rights hereunder, and in case of such assignment, Mortgagor will accord full recognition thereto and agrees that upon the occurrence of an Event of Default hereunder all rights and remedies of the Mortgagee in connection with the interest so assigned shall be enforceable against Mortgagor by such assignee with the same force and effect to the same extent as the same would have been enforceable by the Mortgagee but for such assignment. Mortgagor further agrees that copies of this Mortgage and all

documents delivered in connection with the Indebtedness or otherwise required to be delivered pursuant to this Mortgage may be furnished to such assignee by the Mortgagee and will be furnished to such assignee directly by Mortgagor if such assignee so requests.

23.    Attorney-in-Fact.    If Mortgagor fails to do any of the things required to be done by Mortgagor, Mortgagee may do so for and in the name of Mortgagor and at Mortgagor's expense.    For such purposes, Mortgagor hereby irrevocably appoints Andrew Lee as Mortgagor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Mortgagee's opinion, to accomplish any matters required by this Mortgage or the promissory note secured by this Mortgage.

24.    Due on Sale - Consent by Mortgagee.    Mortgagee may, at its option, declare immediately due and payable all sums secured by this Mortgage upon a) the creation of or contract for the creation of any lien (including but not limited to a mortgage) or encumbrance without the Mortgagee's prior written consent, b), the sale or transfer, without the Mortgagee's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.    A "sale or transfer" means a) the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interests, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest and b) the transfer, sale or assignments of, including but not limited to i) partnership interests if the Borrower is a partnership of  any kind, ii) membership interests if the  Borrower is a limited liability company, and iii) shares or shareholder interests if the Borrower is a corporation.

25.    Attorneys' Fees; Expenses.    If Mortgagee institutes any suit or action to enforce any of the terms of this Mortgage, Mortgagee shall be entitled to recover attorneys' fees at trial and on any appeal.  Whether or not any court action is involved, all expenses incurred by Mortgagee that in Mortgagee's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the Default Rate under the Note.  Expenses covered by this Section include, without limitation, however subject to any limits under applicable law, Mortgagee's attorneys' fees and Mortgagee's legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance. Mortgagor also will pay any court costs, in addition to all other sums provided by law.

13

26.  Consent to Jurisdiction-Governing Law.  To induce Mortgagee to accept this Mortgage, Mortgagor irrevocably agrees that, subject to Mortgagee's sole and absolute election, all actions or proceedings in any way arising out of or related to this agreement will be litigated in courts having situs in Cook County, Illinois, except to the extent that a certain action, must be filed and or litigated in the County where the Property (that is the collateral for this mortgage) is situated (Kane County).

The place of negotiation, execution, and delivery of this Mortgage being Illinois Mortgage shall be construed and enforced according to the laws of IL, without refere: . the conflicts of law principles of IL.

27.  Severability.  In the event that any provision or clause of this Secur instrument or the Note conflicts with applicable law such conflict shall not affect of provisions of this Security Instrument or the Note which can be given effect without conflicting provision. To this end the provisions of this Security Instrument and the ! . are declared to be severable.

28.  Waiver of Right of Redemption.  Notwithstanding any of the provisions t: the contrary contained in this mortgage, Mortgagor hereby waives, to the extent perm· ·d under IL 735 Ilcs 5/15-1601(b), as may be amended any and all rights of redemptior behalf of Mortgagor and on behalf of any other persons permitted to redeem the proj

29.  Waiver of Jury Trial.  Mortgagor waives any right to a trial by jury ir action or proceeding to enforce or defend any rights (i) under this mortgage or any re document or under any amendment, instrument, document or agreement which may : the future be delivered in connection herewith or any related document or (ii) arising from any banking relationship existing in connection herewith, and agrees that any s: action or proceeding will be tried before a court and not before a jury. Mortgagor ag that it will not assert any claim against Mortgagee or any other person indemnified u: this mortgage on any theory of liability for special, indirect, consequential, incidenta punitive damages.

30.  Hazardous Substances.  Borrower shall not cause or permit the pres· ·ce, use, disposal, storage. or release of any Hazardous Substances on or in the Pro· ·ty. Borrower shall not do, nor allow anyone else to do, anything affecting the Property t·· ·s in violation of any Environmental Law. The preceding two sentences shall not app·· ·o the presence. use, or storage on the Property of small quantities of Hazardous Subst· ·ces that are generally recognized to be appropriate to normal residential uses ar·· to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or priv·te party involving the Property and any Hazardous Substance or Environmental Law of

which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary. Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 30, "Hazardous Substances" are those substan~ defined as toxic or hazardous substances by Environmental Law and the follo~ substances: gasoline, kerosene, other flammable or toxic petroleum products, pesticides and herbicides, 'volatile solvents, materials containing asbest~    ~ formaldehyde, and radioactive materials. As used in this paragraph 31, "Enviro~    ~al Law" means federal laws and laws of the jurisdiction where the Property is loca~ed th~ relate to health, safety or environmental protection.

31.    Not Homestead Property.    Borrower declares that this is not Home~ ~ Property. It is investment property.

32.    Riders to this Security instrument.    If one or more riders are exe~~ Borrower and recorded together with this Security Instrument, the coven~~ agreements of each such rider shall be incorporated into and shall amend and sup~    ~ the covenants and agreements of this Security instrument as if the rider(s) were a ~~ ~ this Security Instrument.

33.    Successors.    In the event that the ownership of the Real P~    ~ty becomes vested in a person or persons other than Mortgagor, Mortgagee may, ~ ~~ notice to Mortgagor, deal with such successor or successors in interest of Mortga~ reference to this Mortgage and the Indebtedness in the same manner as with M~ Mortgagor will give immediate written notice to Mortgagee of any conveyan~    ~~~ assessment, transfer or change in ownership of the Real Property, but nothing    ~~~ Paragraph shall vary or negate the provisions of Paragraph 22 hereof.

34.    Rights Cumulative.    Each right, power and remedy herein confer~~ ~~ ~~ Mortgagee is cumulative and in addition to every other rights, power or remedy, ~    ~~ or limited, given now or hereafter existing, at law or inequity, and each and ever~ ~ ~~~, power and remedy herein set forth or otherwise so existing may be exercised fro~ ~~~e to time as often and in such order as may be deemed expedient to Mortgagee ~    the exercise or the beginning of the exercise of one right, power or remedy shall ~    ~e a waiver of the right to exercise at the same time or thereafter any other right, p~ ~ or remedy. No delay or omission of Mortgagee in the exercise of any right, pow~~ or remedy shall impair any such right, power or remedy, or be construed to be a waiver of any type.

35.     Assigns.   This Mortgage and each and every covenant, agreement and other provision hereof shall be binding upon Mortgagor and its successors and assigns (including, without limitation, each and every record owner from time to time of the Real Property or any other person having an interest therein), and shall inure to the benefit of Mortgagee and its successors and assigns.

36.     Time of the Essence.   Time is of the essence for the Promissory Note, Guaranty and this Mortgage and any order of court and any other document evidencing or securing the Indebtedness.

37.     Notice.       Any notice which any party hereto may desire or may be required to give to any other party shall be in writing, and the mailing thereof by registered or certified mail, postage prepaid, return receipt requested, to the respective addresses of the parties set forth below, or to such other place as any party may by notice in writing designate for itself.  In addition, Notice by overnight Courier (i.e. Fed Ex) and Messenger shall be effective notice.

(a)     If the Mortgagee:          ALSJ, Inc.
                                   Attn: Andrew Lee
                                   6603 W. Beckwith
                                   Morton Grove, IL  60053

(b)     If the Mortgagor:          Scott V. Spencer and Edward Spencer
                                    20 Lake Marian Rd..
                                   Carpentersville, IL  60110

Any such other notice may be served by personal delivery thereof to the other party, which delivery shall constitute service of notice hereunder on the date of such delivery.

38.     Customer Identification – USA Patriot Act Notice; OFAC and Bank Secrecy Act.   The Mortgagor hereby acknowledges that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "**Act**"), and the Mortgagee's policies and practices, the Mortgagee is required to obtain, verify and record certain information and documentation that identifies the Mortgagor, which information includes the name and address of the Mortgagor and such other information that will allow the Mortgagee to identify the Mortgagor in accordance with

the Act. The Mortgagor hereby warrants that it shall (a) ensure that no person who owns a controlling interest in or otherwise controls the Mortgagor or any subsidiary of the Mortgagor is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("**OFAC**"), the Department of the Treasury or included in any Executive Orders, and (b) not use or permit the use of the proceeds of the Loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto.

39.  Business Purpose. Mortgagor represents and agrees that the loan evidenced by the Note that is secured by this Mortgage, is **not a personal or consumer loan**, rather is a business loan taken out solely for the purpose of carrying on or acquiring business of the Borrower within the purview of 815 ILCS 205/4, et seq. (or any substitute, amended or replacement statutes).

40.  Land Trust. At the sole and exclusive option of Mortgagee, Mortgagee may request Mortgagor to transfer the Property that is the collateral for this mortgage into a land trust at Chicago Title Land Trust Company and give Mortgagee (or one of Mortgagee's officers) a Power of Direction and a collateral assignment of beneficial interest in said Trust. Mortgagor shall not make such transfer unless Mortgagee so requests. Mortgagor agrees to this provision and will cooperate in signing any forms accomplish this transfer if the Mortgagee so requests.

IN WITNESS WHEREOF, the Mortgagor has caused this Mortgage to be signed, sealed and delivered, jointly and severally, effective as of the day and year above written.

Scott V. Spencer

Edward Spencer

STATE OF ILLINOIS    )
                        ) SS.
COUNTY OF _McHenry_  )

    I, the undersigned, a Notary Public in and for said County, in the State af... 'd,
DO HEREBY CERTIFY that Scott V. Spencer, personally known to me to be th.
person whose name subscribed to the foregoing instrument appeared before me this
in person, and acknowledged that he signed, sealed and delivered the said instr... en.
his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _18_ day of _Oct._ , 2012.

_____
         Notary Public

Commission expires _____05/28/13_____

OFFICIAL SEAL
JOHN P WALLACE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/28/13

STATE OF ILLINOIS    )
                        ) SS.
COUNTY OF _McHenry_ )

    I, the undersigned, a Notary Public in and for said County, in the State afore:
DO HEREBY CERTIFY that Edward Spencer, personally known to me to be the :
person whose name subscribed to the foregoing instrument appeared before me this
in person, and acknowledged that he signed, sealed and delivered the said instrume:
his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this _18_ day of _Oct._ , 2012.

_____
         Notary Public

Commission expires _____05/28/13_____

OFFICIAL SEAL
JOHN P WALLACE
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/28/13

18

# EXHIBIT "A

LEGAL DESCRIPTION:

THAT PART OF THE NORTHEAST QUARTER OF SECTION 15, TOWNSHIP 42 NORTH, RANGE 8, EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIPE ON THE EAST LINE OF SAID SECTION 15,1113.60 FEET SOUTH OF THE NORTHEAST CORNER OF SAID SECTION 15; THENCE SOUTH 89 DEGREES, 55 MINUTES WEST ALONG AN OLD FENCE LINE 968.88 FEET TO THE EASTERLY LINE OF WILLIAMS ROAD; THENCE SOUTHERLY ALONG THE EASTERLY LINE OF WILLIAMS ROAD 294.24 FEET TO THE NORTHERLY LINE OF LAKE MARIAN ROAD; THENCE EASTERLY ALONG *THE* NORTHERLY LINE OF LAKE MARIAN ROAD 1004.03 FEET TO THE EAST LINE OF SAID SECTION 15; THENCE NORTH ALONG THE EAST LINE OF SAID SECTION 15, 244.20 FEET TO THE POINT OF BEGINNING (EXCEPT THAT PART DESCRIBED AS FOLLOWS: COMMENCING AT AN IRON PIPE ON THE EAST LINE OF SAID SECTION 15, 1113.60 FEET SOUTH OF THE NORTH EAST CORNER OF SAID SECTION 15; THENCE SOUTH 89 DEGREES, 55 MINUTES WEST ALONG AN OLD FENCE LINE 828.88 FEET FOR THE POINT OF BEGINNING; THENCE CONTINUING WEST ALONG SAID LAST DESCRIBED COURSE 140 FEET TO THE EASTERLY LINE OF WILLIAMS ROAD; THENCE SOUTHERLY ALONG SAID EASTERLY LINE OF WILLIAMS ROAD 294.24 FEET TO THE NORTHERLY LINE OF LAKE MARIAN ROAD; THENCE EASTERLY ALONG THE NORTHERLY LINE OF LAKE MARIAN ROAD 190 FEET; THENCE NORTHWESTERLY 293.0 FEET TO THE POINT OF BEGINNING), IN THE VILLAGE OF CARPENTERSVILLE, KANE COUNTY, ILLINOIS. ALSO EXCEPTING THEREFROM THE FOLLOWING DESCRIBED PROPERTY: THAT PART OF THE NORTHEAST 1/4 OF SECTION 15, TOWNSHIP 42 NORTH, RANGE 8 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHEAST CORNER OF SAID SECTION 15; THENCE SOUTH 0 DEGREES, 04 MINUTES, 20 SECONDS EAST ALONG THE EAST LINE OF SAID SECTION 15, A DISTANCE OF 1113.60 FEET FOR THE POINT OF BEGINNING; THENCE SOUTH 89 DEGREES, 55 MINUTES, 00 SECONDS WEST ALONG AN OLD FENCE LINE, 514.91 FEET; THENCE SOUTH 02 DEGREES, 55 MINUTES, 28 SECONDS EAST 267.75 FEET TO THE NORTHERLY LINE OF LAKE MARIAN ROAD (SAID POINT BEING 502.21 FEET WESTERLY OF THE EAST LINE OF SAID SECTION 15, AS MEASURED ALONG SAID NORTHERLY LINE OF LAKE MARIAN ROAD); THENCE NORTH 87 DEGREES, 04 MINUTES, 32 SECONDS EAST ALONG SAID NORTHERLY LINE OF LAKE MARIAN ROAD, 502.21 FEET TO THE EAST LINE OF SAID SECTION 15; THENCE NORTH 0 DEGREES, 04 MINUTES, 20 SECONDS WEST ALONG SAID EAST LINE, 242.53 FEET TO THE POINT OF BEGINNING, IN THE VILLAGE OF CARPENTERSVILLE, KANE COUNTY, ILLINOIS.

COMMONLY KNOWN AS: 1 4 LAKE MARIAN ROAD
                    CARPENTERSVILLE, IL 60110

PIN: 03-15-200-030

19



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

### PARTICIPATION AGREEMENT
### TRANSACTION CODE: CAR04172013-5MCRS

This PARTICIPATION AGREEMENT (this "Agreement") is made and entered into on this April day of 17, 2013, by and between, CARCO, LLC, with its principal office at 21415 CIVIC CENTER DRIVE, STE 115, SOUTHFIELD, MI 48076 ("Lender") and Milwaukee McPherson LLC, with its principle office at 860 Old willow Rd Unit 232. Prospect Heights, IL 60070 ("client").

WHEREAS, Client desires to Participate in Funds from the Principals and the Principals are willing to provide Funds to the Client upon and subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## 1. PRIVATE PLACEMENT

### 1.1 Grant of the funds.

Upon and subject to the terms and conditions of this Agreement, the Principals hereby grant to CLIENT a one year private placement opportunity to be paid out in the currency of the United States. Payments shall be non recourse and subject to the satisfaction of the representations and warranties of Client as set out in Article 2 below.

## 2. REPRESENTATION AND WARRANTY

### 2.1 The Representation and Warranties of Client.

Client represents and warrants to the satisfaction of Lender that:

(i) Client has taken all corporate action, and obtained all governmental or similar authorizations, needed to enable it lawfully to enter into, and to exercise and perform its rights and obligations under this Agreement to which it is or will be a party;

(ii) this Agreement will not constitute any violation and shall not be contradictory to any laws and regulations applicable to Client and/or any agreement or instrument to which Client is a party or to which it or its assets are subject;

(iii) this Agreement to which Client is or will be a party constitutes its valid and legally binding obligations, enforceable against it in accordance with its terms, except to the extent limited by equitable principles and laws affecting creditors' rights generally;

(iv) No litigation, arbitration or administrative proceedings are taking place, pending or threatened against Client or Carco LLC. if adversely determined, and not indemnified under a policy of insurance, could have, either separately or in aggregate, a material adverse effect on its ability to perform its obligations under this Agreement to which it is or will be a party;

Initials _TG_          Initials _MM_

1(1)

EXHIBIT
DEFENSE
18
tabbies®



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

(v) Client is financially solvent, is able to pay its debts as they mature and is possessed of sufficient working capital and other resources to complete its obligations arising from or in connection with this Agreement;

(vi) The execution of this agreement shall not violate any securities laws.

3. DRAWDOWN

3.1 Disbursement of the funds.

The funds are to be released in a series of payments paid to the client, by which the funds shall be made available as specified below to the Client as follows: The entire funding will be completed with CARCO LLC and its assignees and nominees. Client authorizes CARCO LLC and assigns to Administrative hold the cash account to draw the funds for the participation transaction.

The payment shall begin within 21 Banking days after the Authentication and Verification of the Blocked Funds Letter and shall be based on the participation amount.

Participation Amount € Five Million USD (5,000,000 USD) Monetized at a rate of 100% LTV for a total monetized amount of € (5,000,000 USD)

4. PAYMENTS

Client/Participant shall receive an amount equal to a minimum of 20% of € 5,000,000 per month to be paid out on the first Monday after 21 banking days and shall be paid monthly for one calendar year. Client shall receive the return of his instrument after one year and one day.

PAYMASTER: VIRGINIA WORLDWIDE GROUP LLC PROFIT COORDINATES FOR PRIVATE PLACEMENT INCOME TO BE PAID:

EACH SCHEDULED MONTHLY PAYMENT WILL BE DISBURSED IN FULL TO PAYMASTERS IN THE FOLLOWING to WILLIAM LEE ANDREWS, ESQ

Initials _TS_        Initials _RM_

2(2)



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

| | |
|---|---|
| PAYMASTER NAME | William Lee Andrews III, Esq. |
| PASSPORT NUMBER | 463630156—USA |
| PAYMASTER TELEPHONE | 540 484-3188/540 904-6993(fax) |
| PAYMASTER CELL | |
| PAYMASTER EMAIL | wlaiiitxlw@aol.com |
| BANK NAME | Wachovia |
| BANK ADDRESS | 1525 West W.T. Harris Blvd, Charlotte, NC 28288 |
| BANK OFFICER | George Mueller |
| BANK TELEPHONE | (704)-427-7381 |
| BANK FAX | (800)-489-3432 |
| SWIFT CODE International | WFBIUS6S |
| ABA ROUTING Domestic | 121000248 |
| ACCOUNT NAME | Virginia Worldwide Group, LLC (SCC ID No. S190370-9) |
| ACCOUNT TYPE | |
| BANK ACCOUNT NUMBER | 2000048006608 |
| CURRENCY FOR THIS BANK | {USD} United States Dollars |
| SPECIAL INSTRUCTIONS | SAME DAY TRANSFER WITH IMMEDIATE CREDIT TO ATTORNEY ESCROW ACCOUNT |
| SPECIAL WIRE INSTRUCTIONS BENEFICIARY: | PLEASE EMAIL CONFIRMATION TO: wlaiiitxlw@aol.com, Gelfond72@gmail.com<br><br>William Lee Andrew/and or assign per sub fee agreement 10% Split equally between all intermediaries. |
| REQUIRED MESSAGE: | "The remitter is known to us. This is done with full bank responsibility and we are Satisfied as to the source of these funds sent to us."<br><br>Transfers instructions shall state:<br><br>"Funds are of clean and clear, of non-criminal origin and are payable in cash immediately upon receipt by beneficiary's bank". |

Initials _TK_          Initials _AM_

3(3)

## CARCO
### Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

5. ASSIGNMENT

5.1 Assignments and transfers by Client.

Client shall not assign or transfer any rights or obligations under this Agreement without the prior written consent of Lender and any attempted assignment without the required consent shall be void.

6. JURISDICTION

7.1 Lender and Client irrevocably agree for the benefit of each other that any legal action, suit or proceeding arising out of or in connection with this Agreement shall be brought in the courts of Virginia, which shall have jurisdiction to hear and determine any such proceedings and to settle any disputes arising out of or in connection with this Agreement and irrevocably submit to the jurisdiction of such courts.

7. Appropriate Forum.

Each party hereto irrevocably waives any objections which it may have now or hereafter to the laying of the venue of any proceedings in the courts of Virginia and any claim that any such proceedings have been brought in an inappropriate forum and further irrevocably agrees that a judgment in any proceedings brought in the courts of Virginia shall be conclusive and binding on the parties hereto and may be enforced in the courts of any other jurisdiction.

8. CONFIDENTIALITY

8.1 Confidentiality of Information.

Each party hereto shall maintain the confidentiality of any confidential information learned, supplied or disclosed by the other party, shall not disclose, publish, release or transfer, without the prior written consent of the other party, any confidential information to any person or entity other than to those officers or employees of the receiving party, and shall not use any confidential information for itself or others for any purpose other than the purpose contemplated herein. In protecting confidential information, the receiving party shall take all necessary precautions and, without limiting the foregoing, such confidential information shall be treated in at least the same manner and with the same degree of care as the receiving party applies with respect to its own confidential information of like importance, but in no event, shall the receiving party take anything less than reasonable care to prevent the disclosure of the disclosing party's confidential information.

If a receiving party is required to disclose any of the other party's confidential information pursuant to the order or requirement of a court, administrative agency or other governmental body, such receiving party shall provide prompt notice thereof to the disclosing party and use commercially reasonable efforts to obtain a protective order or otherwise prevent or minimize public disclosure of such confidential information.

Initials _____     Initials _____
4(4)

**CARCO**
**Financial Solutions**
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

## 9. INDEMNIFICATION

9.1 Client's Indemnities.

Client agrees at all times whether before, during or after the term of this Agreement, to indemnify and hold harmless Lender from and against all losses which may be incurred by or made or asserted against Lender at any time, and Client undertakes to indemnify Lender and its representatives and agents against all losses as a consequence of:

(i) Any failure by Client to comply with its obligations under this Agreement;

(ii) Any default or breach by Client in the due and punctual performance of its obligations under this Agreement;

(iii) Any default in payment by Client of any sums when due and payable to Lender under this Agreement.

(iv) Any claims resulting from the monetizing of this bank guarantee on behalf of Client.

## 10. GENERAL PROVISIONS

10.1 No Agency.   Neither party is the agent, representative or partner of the other party nor shall this Agreement be interpreted or construed to create an association, agency or partnership relationship between the parties.

10.2 Severability.   In case any one or more of the paragraphs contained in this Agreement should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining paragraphs contained herein shall not in any way be affected, impaired, prejudiced or disturbed thereby. This agreement may be terminated at anytime without liability to either party.

10.3 Counterparts.   This Agreement may be simultaneously executed in several counterparts, and all such counterparts executed and delivered, each as an original, shall constitute one and the same instrument.

10.4 Costs.   Each party will be responsible for the payment of its own costs and expenses, including reasonable attorneys' fees and expenses, in connection with the transactions contemplated in this Agreement unless otherwise specified.

10.5 Headings.   The descriptive headings of the several paragraphs of this Agreement were formulated, used and inserted in this Agreement for convenience only and shall not be deemed to affect the meaning or construction of any of the paragraphs hereof.

10.6 Entire Agreement.   This Agreement contains the entire understanding of the parties relating to the subject matter hereof, supersedes all prior agreements and understandings relating to the subject matter hereof and shall not be amended, except by a written instrument hereafter signed by each of the parties hereto.

Initials ____        Initials ____

5(5)



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

**11. PENALTY**

If within the First (30) days the initial tranche is not disbursed the instrument shall be returned, free and clear of any encumbrances. Said return of instrument due to non performance and shall provide for the payment of a penalty charge of 2% of the face value of the instrument, said penalty charge being due and payable to the Client, within 72 Hours upon return of the instrument. This shall also apply to the client in the event of non delivery of an instrument or unsuccessful blocking. In the event that CARCO LLC cannot fund within the contracted period, CARCO, LLC will send the instrument back to the Original and will return all escrow capital held by Carco LLC to Client along with penalties and interest. Terry Barnes and Lawrence Gelfond become personal liable of all Capital along with penalties and interest if capital does not get refund it.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

BY: _____
CARCO LLC
Terry Barnes
Chief finance Officer

BY: _____
Milwaukee McPherson LLC
Carlos Meza
Manager

BY: _____
CARCO LLC
Lawrence Gelfond
Officer

Initials _TB_          Initials _____

6(6)



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

Appendix "B"
Passport Photo Client

PRIVATE & CONFIDENTIAL FOR PERSONAL INVESTOR

## Copy of Colored Passport





# EXHIBIT A

NOTE: For use for transactions where the transferring bank is within the USA (domestic). Please contact me for alternate banking coordinates for transactions where the transferring bank is outside the USA (international).

| | |
|---|---|
| Paymaster: | Palmore Legal Services, PLLC., represented by Mrs. Chiketa Palmoré-Bryant, BS, MSA, Esq |
| Federal EIN/Passport number: | EIN #26.0097678/439997064 USA |
| Michigan License - USA: | P63927 |
| Cellular: | 313.613.9938 |
| Email Address | chiketapalmore@gmail.com |
| **PAYMASTER DETAILS** | Full Legal Name: :Palmore Legal Services, PLLC. <br> Full Postal Address: :850 Long Lake Road, Suite D, Troy, Michigan 48085 <br> Full Mail Drop Address: :P.O. Box 3521, Southfield, Michigan 48037 <br> Email : :chiketapalmore@gmail.com <br> Facsimile: :206.350.2636 <br> Phone: :313.613.9938 <br> Bank Name: :JP Morgan Chase <br> Branch: :USA <br> Address: :7301 Wyoming, Dearborn, Michigan 48126 <br> Officer/Title: :Ali Z. Eddine <br> Officer/Title: :Small Business Manager <br> Telephone Number: :313.491.6945 <br> Facsimile Number: :313.491.8021 <br> Account Name: :Palmoré Legal Services, PLLC Attorney Trust – (IOLTA) <br> Account Number: :412872918 <br> SWIFT Code: :CHASUS33 <br> ABA/IBAN/Sort Code: :072000326 <br> Account Signatory (1): :Chiketa Palmoré-Bryant, BS, MSA, Esq. <br> Account Signatory (2): :None |
| Paymaster For: | (1)       (2)       (3) |
| Special Instructions: | 1) Same Day transfer and immediate credit in USD Funds <br> 2) The Remitter is known to us. This is done with full Banking responsibility and we are satisfied as to the source of the funds sent to us. <br> 3) Please provide a courtesy copy of the swift/wire confirmation receipt to email address: chiketapalmore@gmail.com <br> 4) All transfer instructions shall state "Private Equity Client USD" |
| Signature: | *[signature]* <br><br> 06/03/2013 |

# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

PARTICIPATION AGREEMENT
TRANSACTION CODE: CAR07082013-5MCRS

This PARTICIPATION AGREEMENT (this "Agreement") is made and entered into on this July day of 8, 2013, by and between, CARCO, LLC, with its principal office at 21415 CIVIC CENTER DRIVE, STE 115, SOUTHFIELD, MI 48076 ("Lender") and Consultek Sales, with its principle office at 1500 Driftwood CT Crystal Lake IL 60014 ("client").

WHEREAS, Client desires to Participate in Funds from the Principals and the Principals are willing to provide Funds to the Client upon and subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## 1. PRIVATE PLACEMENT

### 1.1 Grant of the funds.

Upon and subject to the terms and conditions of this Agreement, the Principals hereby grant to CLIENT a one year private placement opportunity to be paid out in the currency of the United States. Payments shall be non recourse and subject to the satisfaction of the representations and warranties of Client as set out in Article 2 below.

## 2. REPRESENTATION AND WARRANTY

### 2.1 The Representation and Warranties of Client.

Client represents and warrants to the satisfaction of Lender that:

(i) Client has taken all corporate action, and obtained all governmental or similar authorizations, needed to enable it lawfully to enter into, and to exercise and perform its rights and obligations under this Agreement to which it is or will be a party;

(ii) this Agreement will not constitute any violation and shall not be contradictory to any laws and regulations applicable to Client and/or any agreement or instrument to which Client is a party or to which it or its assets are subject;

(iii) this Agreement to which Client is or will be a party constitutes its valid and legally binding obligations, enforceable against it in accordance with its terms, except to the extent limited by equitable principles and laws affecting creditors' rights generally;

(iv) No litigation, arbitration or administrative proceedings are taking place, pending or threatened against Client or Carco LLC. if adversely determined, and not indemnified under a policy of insurance, could have, either separately or in aggregate, a material adverse effect on its ability to perform its obligations under this Agreement to which it is or will be a party;

Initials _TE_          Initials _____

1(1)


EXHIBIT
DEFENSE
19

## CARCO
### Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

(v) Client is financially solvent, is able to pay its debts as they mature and is possessed of sufficient working capital and other resources to complete its obligations arising from or in connection with this Agreement;

(vi) The execution of this agreement shall not violate any securities laws.

3. DRAWDOWN

3.1 Disbursement of the funds.

The funds are to be released in a series of payments paid to the client, by which the funds shall be made available as specified below to the Client as follows: The entire funding will be completed with CARCO LLC and its assignees and nominees. Client authorizes CARCO LLC and assigns to Administrative hold the cash account to draw the funds for the participation transaction.

The payment shall begin within 21 Banking days after the Authentication and Verification of the Blocked Funds Letter and shall be based on the participation amount.

Participation Amount € Five Million USD (5,000,000 USD) Monetized at a rate of 100% LTV for a total monetized amount of € (5,000,000 USD)

4. PAYMENTS

Client/Participant shall receive an amount equal to a minimum of 20% of € 5,000,000 per month to be paid out on the first Monday after 21 banking days and shall be paid monthly for one calendar year. Client shall receive the return of his instrument after one year and one day.

PAYMASTER: PALMORE LEGAL SERVICES, PLLC PRIVATE PLACEMENT INCOME TO BE PAID:

EACH SCHEDULED MONTHLY PAYMENT WILL BE DISBURSED IN FULL TO PAYMASTERS IN THE FOLLOWING to PALMORE LEGAL SERVICES, PLLC

Initials _TL_        Initials _____

2(2)



# CARCO
## Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

| | |
|---|---|
| PAYMASTER NAME | Palmore Legal Services, PLLC. |
| PASSPORT NUMBER | 439997064 USA |
| PAYMASTER TELEPHONE | 313-613-9938 |
| PAYMASTER FAX | 206-202-4894 |
| PAYMASTER EMAIL | chiketapalmore@gmail.com |
| BANK NAME | JP Morgan Chase |
| BANK ADDRESS | 7301 Wyoming, Dearborn, Michigan 48126 |
| BANK OFFICER | Ali Z. Eddine Small Business Manager |
| BANK TELEPHONE | 313-491-6945 |
| BANK FAX | 313-491-8021 |
| SWIFT CODE International | CHASUS33 |
| ABA ROUTING Domestic | 072000326 |
| ACCOUNT NAME | Palmore Legal Services, PLLC Attorney Trust |
| ACCOUNT TYPE | |
| BANK ACCOUNT NUMBER | 412872918 |
| CURRENCY FOR THIS BANK | {USD} United States Dollars |
| SPECIAL INSTRUCTIONS | SAME DAY TRANSFER WITH IMMEDIATE CREDIT TO ATTORNEY ESCROW ACCOUNT |
| SPECIAL WIRE INSTRUCTIONS BENEFICIARY: | PLEASE EMAIL CONFIRMATION TO: chiketapalmore@gmail.com, Gelfond72@gmail.com |
| REQUIRED MESSAGE: | "The remitter is known to us. This is done with full bank responsibility and we are Satisfied as to the source of these funds sent to us." <br><br> Transfers instructions shall state: <br><br> "Funds are of clean and clear, of non-criminal origin and are payable in cash immediately upon receipt by beneficiary's bank". |

Initials *TE*          Initials _____

3(3)

**CARCO**
**Financial Solutions**
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

### 5. ASSIGNMENT

5.1 Assignments and transfers by Client.

Client shall not assign or transfer any rights or obligations under this Agreement without the prior written consent of Lender and any attempted assignment without the required consent shall be void.

### 6. JURISDICTION

7.1 Lender and Client irrevocably agree for the benefit of each other that any legal action, suit or proceeding arising out of or in connection with this Agreement shall be brought in the courts of Virginia, which shall have jurisdiction to hear and determine any such proceedings and to settle any disputes arising out of or in connection with this Agreement and irrevocably submit to the jurisdiction of such courts.

### 7. Appropriate Forum.

Each party hereto irrevocably waives any objections which it may have now or hereafter to the laying of the venue of any proceedings in the courts of Virginia and any claim that any such proceedings have been brought in an inappropriate forum and further irrevocably agrees that a judgment in any proceedings brought in the courts of Virginia shall be conclusive and binding on the parties hereto and may be enforced in the courts of any other jurisdiction.

### 8. CONFIDENTIALITY

8.1 Confidentiality of Information.

Each party hereto shall maintain the confidentiality of any confidential information learned, supplied or disclosed by the other party, shall not disclose, publish, release or transfer, without the prior written consent of the other party, any confidential information to any person or entity other than to those officers or employees of the receiving party, and shall not use any confidential information for itself or others for any purpose other than the purpose contemplated herein. In protecting confidential information, the receiving party shall take all necessary precautions and, without limiting the foregoing, such confidential information shall be treated in at least the same manner and with the same degree of care as the receiving party applies with respect to its own confidential information of like importance, but in no event, shall the receiving party take anything less than reasonable care to prevent the disclosure of the disclosing party's confidential information.

If a receiving party is required to disclose any of the other party's confidential information pursuant to the order or requirement of a court, administrative agency or other governmental body, such receiving party shall provide prompt notice thereof to the disclosing party and use commercially reasonable efforts to obtain a protective order or otherwise prevent or minimize public disclosure of such confidential information.

Initials _TF_          Initials _____

4(4)

**CARCO**
**Financial Solutions**
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

## 9. INDEMNIFICATION

9.1 Client's Indemnities.

Client agrees at all times whether before, during or after the term of this Agreement, to indemnify and hold harmless Lender from and against all losses which may be incurred by or made or asserted against Lender at any time, and Client undertakes to indemnify Lender and its representatives and agents against all losses as a consequence of:

(i) Any failure by Client to comply with its obligations under this Agreement;

(ii) Any default or breach by Client in the due and punctual performance of its obligations under this Agreement;

(iii) Any default in payment by Client of any sums when due and payable to Lender under this Agreement.

(iv) Any claims resulting from the monetizing of this bank guarantee on behalf of Client.

## 10. GENERAL PROVISIONS

10.1 No Agency.   Neither party is the agent, representative or partner of the other party nor shall this Agreement be interpreted or construed to create an association, agency or partnership relationship between the parties.

10.2 Severability.   In case any one or more of the paragraphs contained in this Agreement should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining paragraphs contained herein shall not in any way be affected, impaired, prejudiced or disturbed thereby. This agreement may be terminated at anytime without liability to either party.

10.3 Counterparts.   This Agreement may be simultaneously executed in several counterparts, and all such counterparts executed and delivered, each as an original, shall constitute one and the same instrument.

10.4 Costs.   Each party will be responsible for the payment of its own costs and expenses, including reasonable attorneys' fees and expenses, in connection with the transactions contemplated in this Agreement unless otherwise specified.

10.5 Headings.   The descriptive headings of the several paragraphs of this Agreement were formulated, used and inserted in this Agreement for convenience only and shall not be deemed to affect the meaning or construction of any of the paragraphs hereof.

10.6 Entire Agreement.   This Agreement contains the entire understanding of the parties relating to the subject matter hereof, supersedes all prior agreements and understandings relating to the subject matter hereof and shall not be amended, except by a written instrument hereafter signed by each of the parties hereto.

Initials _____        Initials _____

5(5)



## CARCO
### Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

11. PENALTY

If within the First (30) days the initial tranche is not disbursed the instrument shall be returned, free and clear of any encumbrances. Said return of instrument due to non performance and shall provide for the payment of a penalty charge of 2% of the face value of the instrument, said penalty charge being due and payable to the Client, within 72 Hours upon return of the instrument. This shall also apply to the client in the event of non delivery of an instrument or unsuccessful blocking. In the event that CARCO LLC cannot fund within the contracted period, CARCO, LLC will send the instrument back to the Original and will return all escrow capital held by Carco LLC to Client along with penalties and interest. Terry Barnes and Lawrence Gelfond become personal liable of all Capital along with penalties and interest if capital does not get refund it.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

BY: _____          BY: _____
CARCO LLC                                    CONSULTEK SALES
Terry Barnes                                 Cordel Crane
Chief finance Officer                        Manager

BY: _____
CARCO LLC
Lawrence Gelfond
Officer

Initials _TB_          Initials _____

6(6)



## CARCO
### Financial Solutions
21415 Civic Center Drive, Suite 115, Southfield, MI 48076
Tel: (630) 808-9572; Fax: (248) 856-0611
Email: Carcoinfo@gmail.com

Appendix "B"
Passport Photo Client

Initials $\overline{T6}$      Initials _____

7(7)

PRIVATE & CONFIDENTIAL FOR PERSONAL INVESTOR

## Copy of Colored Passport

