## JOINT PARTICIPATION AGREEMENT

THIS JOINT PARTICIPATION AGREEMENT ("*Agreement*") is made and entered into as of the 16th day of October, 2012 by and between Milwaukee McPherson LLC, an Illinois limited liability company (identified herein as "*Milwaukee*"); and Renaissance Capital Group LLC, a Nevada Limited liability company, on behalf of itself and its subsidiaries, affiliates, successors and assigns (collectively, "*Renaissance*").

### RECITALS:

A.     Renaissance, or its nominee, has or can immediately obtain Twenty Five Million U.S. Dollars ($25,000,000) in immediately available funds (the "*Funds*") pursuant to the terms and conditions of this Agreement.

B.     Milwaukee is an accredited investor that desires to have conditional access to the Funds to facilitate a certain specific permitted investment subject to the conditions set forth in this Agreement.

C.     To facilitate the permitted investment proposed by Milwaukee, Renaissance agrees to confirm the Funds on deposit at the Bank initially for a period of twenty eight (28) calendar days and then for a period of up to three hundred sixty four (364) calendar days, subject to the conditions and pursuant to the terms of this Agreement.

D.     Milwaukee intends to pay Renaissance an Initiation Fee of Four Hundred Ten Thousand U.S. Dollars ($410,000) for the conditional use of the Funds for the initial twenty eight (28) calendar days, as set forth in this Agreement and Participation Fees for the further conditional use of funds as set forth in this Agreement and as further described below, in consideration of Renaissance's performance of its obligations pursuant to this Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the adequacy and legal sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties agree as follows:

1.     Defined Terms.  Except as otherwise expressly provided in this Agreement, the following capitalized terms shall have the respective meanings ascribed to them for purposes of this Agreement:

"*Account*" means the account established at the Bank in the name of Renaissance nominee in which Renaissance will cause the Funds to be deposited.

"*Affiliate*" or "*Affiliated*" means, with respect to any specified Person, a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, such specified Person.

"*Bank*" means Credit Suisse, Zurich, Switzerland.

"*Commitment Letter*" means the Renaissance Commitment Letter, substantially in the form of Exhibit A hereto, to be executed and delivered by Renaissance.

1



EXHIBIT
DEFENSE
EXHIBIT 20

"*Confidential Information*" means any information that a party designates as confidential or which the receiving party knows or has reason to know is confidential. Without limiting the foregoing, Confidential Information includes financial, business and technical plans and strategies, client or customer lists and information, inventions, new products, services or technology. Confidential Information does not include information which is: (a) already known by the receiving party at time of disclosure; (b) or becomes, through no act or fault of the receiving party, publicly known; (c) received by the receiving party from a third party without a restriction on disclosure or use; or (d) independently developed by the receiving party without reference to the disclosing party's Confidential Information.

"*Default*" has the meaning set forth in Section 6.1.

"*Deposit Period*" means initially a period of twenty eight (28) calendar days following the delivery of the Renaissance Deliveries, provided that upon payment of the Initiation Fee by Milwaukee and the payment of the Participation Fees by Milwaukee as each may become due, the Deposit Period shall mean a period of up to three hundred sixty four (364) calendar days following the delivery of the Renaissance Deliveries.

"*Governmental Body*" means any legislature, agency, bureau, branch, department, division, commission, court, tribunal, magistrate, justice, multi-national organization, quasi-governmental body or other similar recognized organization or body of any federal, state, county, municipal, local or foreign government or other similar recognized organization or body exercising similar powers or authority.

"*Initiation Fee*" has the meaning set forth in Section 2.2.

"*Material Adverse Effect*" means a change (or effect) in the condition (financial or otherwise), properties, assets, liabilities, rights, obligations, operations, business or prospects which, individually or in the aggregate, could reasonably be expected to be materially adverse to such condition, properties, assets, liabilities, rights, obligations, operations, business or prospects of Milwaukee.

"*Other Assets*" has the meaning set forth in Section 2.4.

"*Participation Fee*" has the meaning set forth in Section 3.3.

"*Permitted Investment*" has the meaning set forth in Section 3.2.

"*Person*" means any individual, partnership, limited liability company, corporation, association, joint stock company, trust, entity, joint venture, labor organization, unincorporated organization, Governmental Body or other entity.

"*Returns*" means any distributions, profits, earnings or other payments (other than return of capital) received by Renaissance or Milwaukee with respect to the Funds as a result of a Permitted Investment; provided, however, that Returns shall not include interest accruing on any funds in the Account not resulting directly from a Permitted Investment.

"*Transaction Documents*" has the meaning set forth in Section 4.3.

2.      **Deposit of Funds.**

2.1     **Deposit of Initiation Fee.** As soon as reasonably practicable following execution and delivery of this Agreement, Milwaukee shall deliver to Renaissance the sum of Four Hundred Ten Thousand U.S. Dollars ($410,000) ("*Initiation Fee*") by wire transfer of immediately available funds in accordance with the terms and conditions of this Agreement. All payments made to Renaissance pursuant to this Agreement shall be from Milwaukee's own funds, and not third party funds. Upon satisfaction of the conditions specified in Section 2.3, the Initiation Fee will be paid to Renaissance as provided in this Agreement, and shall be fully earned and non-refundable.

2.2     **Deliveries by Renaissance.** As soon as reasonably practicable following the execution and delivery of this Agreement and the payment of the Initiation Fee by Milwaukee, Renaissance will deliver to Milwaukee, copies of (collectively, the "*Renaissance Deliveries*"): (a) written confirmation in the form of a current Bank statement, or a letter from the Bank confirming that the Funds are on deposit in the Account, and (b), the executed Commitment Letter. Upon Renaissance's satisfaction of the obligations set forth in this Section 2.3, Renaissance will then be entitled to immediate payment of the Initiation Fee and to delivery of its Initiation Fee by the Escrow Agent.

2.3     **Maintenance of Funds in the Account.** Subject to the provisions of Section 6 below, Renaissance covenants and agrees to maintain the Funds, or cause the Funds to be maintained, on deposit in the Account until the earlier to occur of (a) the termination of the Deposit Period and (b) such time as Milwaukee notifies Renaissance that the Permitted Investment has been completed and that the Funds are no longer required to be maintained in the Account. The parties acknowledge and agree that Renaissance may deposit other funds or assets ("*Other Assets*") in the Account in addition to the Funds deposited pursuant to this Agreement. Milwaukee will not receive income or returns with respect to any of the other funds or assets in the Account that may be deposited in addition to the Funds deposited pursuant to this Agreement. Any income or returns with respect to any Other Assets is to be paid to Renaissance.

3.      **Use of Funds.** Milwaukee will have conditional access to the Funds and the Account to the extent set forth in this Section 3.

3.1     **Conditional Access.** Milwaukee shall at all times guard against theft of identity concerning the Funds and the Account, and/or the Account holder, and/or the interest earned on the Funds. Any transmission of Account information shall be done only with the express prior written permission of Renaissance, and only to the attorney, bank, accounting firm, or brokerage firm of the Milwaukee designated Person conducting a Permitted Investment, after first obtaining the written agreement from such Person and the written approval of Renaissance of such written agreement, to treat the above mentioned information as confidential and not to re-convey same to any other Person. The company name, officer name and title, address, telephone and fax of any party receiving such information shall be provided to Renaissance.

3.2     **Permitted Investment.** At any time during the term of this Agreement and after payment of the Initiation Fee and all other amounts required hereunder to Renaissance, the Funds may be used solely for the investment opportunity which has been disclosed in writing and approved by Renaissance prior to making such investment as provided in this Agreement

3

(the "*Permitted Investment*"). The Permitted Investment shall be a transaction in which the Funds are exposed to no greater investment or custodial risk than the Funds enjoy in the Account. The Account is at all times maintained in a non-depletion condition, with the Bank being responsible for maintaining same. Milwaukee represents and warrants that Milwaukee is able to conduct or arrange for, certain principal risk free transactions, without exposing the Funds to any risk whatsoever, and without incurring any lien, claim, encumbrance, additional signatory, additional management agreement or right of offset on the Funds. The Funds may be encumbered, blocked, or exchanged, but only upon Renaissance receipt of an irrevocable Bank undertaking, or other investment grade (A1/P1) obligation, acceptable to Renaissance in its sole and exclusive determination. The parties acknowledge and agree that Other Assets may, at the sole and absolute discretion of Renaissance, be utilized to make the Permitted Investment along with the Funds.

3.3    Renaissance Participation Payments. As additional consideration for performance by Renaissance of its obligations hereunder, Milwaukee shall pay to Renaissance, by wire-transfer of immediately available funds to an account designated by Renaissance, One Hundred Twenty Five Thousand U.S. Dollars ($125,000) per each twenty eight (28) calendar day period, payable in advance (a "*Participation Fee*"). Each Participation Payment is due and payable to Renaissance during the Deposit Period three (3) calendar days prior to the beginning of each twenty eight (28) day period. Payment shall be deemed made when actually received by Renaissance and shall be fully earned and non-refundable upon Renaissance's satisfaction of the conditions specified herein. Milwaukee shall be entitled to receive all Returns from the Permitted Investment, except for the Participation Fee or as otherwise provided in this Agreement. For avoidance of doubt, if Renaissance maintains Other Assets in the Account and any such Other Assets are used for a Permitted Investment, then the amount of Returns which Milwaukee is entitled to receive hereunder shall be solely those returns (less any Participation Fees and other amounts due Renaissance hereunder) attributable to the Funds, calculated based on the proportion which the Funds represent of the total Funds and Other Assets utilized for the Permitted Investment.

3.4    Obligations of Milwaukee. In making any representation to any Person concerning the Funds, Milwaukee shall in each and every instance fully disclose: (a) to such Person the restrictions and limitations on Milwaukee and its access to the Funds as specified in this Agreement, and (b) to Renaissance, the complete company name, officer name and title, address, telephone and fax of each Person Milwaukee may be dealing with, with respect to the Funds. Without the express, written and advance approval by Renaissance (which approval may be withheld by Renaissance in its sole and absolute discretion), Milwaukee shall not, nor make any attempt to, whether directly or indirectly, use, access, transfer any of the Funds, contact the Bank or signatories to the account in which the funds are located, or subject (or cause to be subjected) any of the Funds to any claim, security interest, lien, encumbrance, risk, call, hypothecation or other adverse interest or claim whatsoever.

3.5    Non-permitted Uses of Funds or Account Information. Milwaukee covenants and agrees not to engage in any of the following activities or actions with respect to the Funds, the Account or Account information: (a) any activity of any kind which is not expressly permitted by this Section 3, (b) the publication, circulation or disclosure of the Funds or Renaissance Account information to any party except as permitted herein, and (c) any activity which places the Funds or Account at risk of any kind.

4

3.6     Interest Income and Taxes.    As between Milwaukee and Renaissance, Renaissance shall be entitled to any and all interest income accruing from any Funds in the Account and be responsible for any income tax deriving from such interest income.

3.7     Trading Income.  Subject to the terms and conditions of this Agreement, as between Milwaukee and Renaissance, Milwaukee shall be entitled to all the trading income resulting from the Permitted Investment utilizing Renaissance's commitment to deposit Funds of Twenty Five Million U.S. Dollars ($25,000,000) in the Account.  Milwaukee shall be responsible for any income tax deriving from such trading income.

3.8     Failure to Pay Fees Due.  In the event Milwaukee fails to make timely payment of the Initiation Fee, any Participation Fee, or any payments under this Agreement, such failure shall constitute a Default under Section 6 of this Agreement and Renaissance may withdraw the Funds from the Account.  Milwaukee shall be obligated to immediately return any documents received from Renaissance and to notify all parties who have received documents from Milwaukee that the transaction has been terminated. Thereafter, unless a Permitted Investment has occurred, Milwaukee shall have no further liability to Renaissance as to payment of the Participation Fees.

3.9     Return of Funds.  Upon termination of the Deposit Period or as otherwise provided herein, Renaissance shall be free to immediately withdraw Funds from the Account without restriction hereunder and Renaissance shall have no further obligations hereunder. Regardless of whether Milwaukee receives the Funds for the Permitted Investment or the Funds are returned to Renaissance for any reason, the Initiation Fee and Participation Fee(s) shall be non-refundable and fully earned upon Renaissance's satisfaction of its obligations described in Section 2.3 and Section 2.4.

4.     Representations and Warranties of Milwaukee.  Milwaukee hereby represents and warrants to Renaissance that:

4.1     Organization and Corporate Authority. Milwaukee is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Illinois.  Milwaukee has full corporate power and authority to own and hold its properties and to carry on its business as now conducted and as proposed to be conducted, to execute, deliver and perform this Agreement.

4.2     Authorization; No Conflict; No Violation.  Milwaukee's execution and delivery of this Agreement and performance of its obligations hereunder, have been duly authorized by all requisite corporate action and will not (a) result in a violation of Milwaukee's articles of organization or bylaws, (b) result in a violation of any applicable law, rule or regulation, or any order, injunction, judgment or decree of any Governmental Body, (c) conflict with, result in a breach of, or constitute (or, with due notice or lapse of time or both, would constitute) a default under, or give rise to any right of termination, acceleration or cancellation under, any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Milwaukee or any of its properties or assets is bound, or (d) require any consent, approval, notification, waiver or other similar action from any third party. No provision of this Agreement violates, conflicts with, results in a breach of or constitutes (or, with due notice or lapse of time or both, would constitute) a default by any

5

other party under any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Milwaukee is a party.

4.3   _Validity_. This Agreement, the Escrow Agreement and any documents, certificates or other instruments to be executed and delivered by Milwaukee in connection herewith (collectively, the *"Transaction Documents"*) have been (or will be) duly executed and delivered by Milwaukee and constitute (or will constitute) the legal, valid and binding obligation of Milwaukee, enforceable against it in accordance with their respective terms, except: (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

4.4   _Regulatory Approvals_. All consents, approvals, authorizations and other requirements prescribed by any law, rule or regulation which must be obtained or satisfied by Milwaukee and that are necessary for the execution, delivery and performance by Milwaukee of this Agreement and the other Transaction Documents, and that are necessary for the consummation of the transactions contemplated hereby, have been obtained and satisfied.

4.5   _No Litigation_. There are no actions, suits, investigations or proceedings (judicial, administrative or otherwise) pending or, to the best knowledge of Milwaukee, threatened against Milwaukee, or any property of Milwaukee, in any court or before any Governmental Body.

4.6   _Compliance with Law_. Milwaukee has complied with all laws, rules, regulations and orders applicable to its business, operations, properties, assets, products and services. Milwaukee has all necessary permits, licenses and other authorizations required to conduct its business as conducted and as proposed to be conducted, and Milwaukee has operated its business pursuant to and in compliance with the terms of all such permits, licenses and other authorizations. There is no existing law, rule, regulation or order, and Milwaukee (after due inquiry) is not aware of any proposed law, rule, regulation or order of any Governmental Body which would prohibit or restrict Milwaukee from, or otherwise adversely affect Milwaukee in, conducting its business in any jurisdiction in which it is now conducting business or in which it proposes to conduct business.

4.7   _Adequacy of Consideration; Solvency_. The consideration to be paid by Milwaukee under this Agreement and the other Transaction Documents constitutes fair and adequate consideration to Milwaukee. Milwaukee does not intend, by executing and delivering this Agreement or entering into any transactions contemplated hereby, to hinder, delay or defraud any Person to whom Milwaukee is indebted or will become indebted. Milwaukee is solvent and able to pay and discharge its obligations when and as they become due and the transactions contemplated by this Agreement and the other Transaction Documents will not result in Milwaukee becoming insolvent.

4.8   _Preexisting Relationship; Capacity_. Milwaukee either (a) has a preexisting personal or business relationship with Renaissance within the meaning of Section 25118 of the *California Corporations Code* and/or (b) by reason of its own business and financial experience or that of its professional advisers, has the capacity to protect its own interest in connection with the transactions contemplated by this Agreement and the other

6

Transaction Documents to be executed and delivered pursuant hereto, within the meaning of Section 25118 of the *California Corporations Code*.

        4.9     <u>Disclosure</u>. No representation, statement or information contained in this Agreement or any agreement, certificate or other instrument executed in connection herewith or delivered pursuant hereto, or made available or furnished to Renaissance or its representatives by Milwaukee, contains or will contain any untrue statement of a material fact or omits or will omit any material fact necessary to make the information contained therein not misleading.

    5.     <u>Representations and Warranties of Renaissance</u>. Renaissance hereby represents and warrants to Milwaukee that:

        5.1     <u>Organization and Corporate Authority</u>. Renaissance is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Nevada. Renaissance has full corporate power and authority to own and hold its properties and to carry on its business as now conducted and as proposed to be conducted, to execute, deliver and perform this Agreement.

        5.2     <u>Authorization: No Conflict: No Violation</u>. Renaissance's execution and delivery of this Agreement and performance of its obligations hereunder, have been duly authorized by all requisite corporate action and will not (a) result in a violation of Renaissance's articles of organization or bylaws, (b) result in a violation of any applicable law, rule or regulation, or any order, injunction, judgment or decree of any Governmental Body, (c) conflict with, result in a breach of, or constitute (or might constitute with due notice or lapse of time or both) a default under, or give rise to any right of termination, acceleration or cancellation under, any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Renaissance or any of its properties or assets is bound, or (d) require any consent, approval, notification, waiver or other similar action from any third party. No provision of this Agreement violates, conflicts with, results in a breach of or constitutes (or, with due notice or lapse of time or both, would constitute) a default by any other party under any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Renaissance is a party.

        5.3     <u>Validity</u>. This Agreement and any documents to be executed and delivered by Renaissance in connection herewith have been duly executed and delivered by Renaissance and constitute the legal, valid and binding obligation of Renaissance, enforceable against Renaissance in accordance with their respective terms, except: (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

    6.     <u>Default and Remedies</u>.

        6.1     <u>Defaults</u>. The occurrence of any one or more of the following events, acts or occurrences shall constitute an event of default (each, a "*Default*") under this Agreement:

           6.1.1    Milwaukee fails to make any payment to Renaissance when due as contemplated under this Agreement and such failure shall have continued for two (2) business days after notice from Renaissance to Milwaukee.

6.1.2    Milwaukee fails to fully and promptly perform when due, or comply with, any agreement, covenant, term or condition binding on it contained in this Agreement and such failure shall have continued for three (3) business days after notice from Renaissance to Milwaukee.

6.1.3    Any representation or warranty made or deemed made by Milwaukee in the Transaction Documents or in any writing furnished in connection with or pursuant to this Agreement, or any report, certificate or other information provided by Milwaukee to Renaissance in connection with or pursuant to this Agreement, shall be false or misleading in any material respect on the date when made or when deemed made or repeated.

6.1.4    Milwaukee is unable to pay its debts as they mature or admits in writing its inability to pay its debts as they mature.

6.1.5    Milwaukee liquidates or dissolves or the business of Milwaukee is suspended; Milwaukee files or commences a voluntary petition, case proceeding or other action seeking reorganization, arrangement, readjustment of its debts or any other relief under any existing or future law of any jurisdiction, domestic or foreign, state or federal, relating to bankruptcy, insolvency, reorganization or relief of debtors, or Milwaukee takes any other action indicating its consent to, approval of, or acquiescence in, any such petition, case, proceeding or other action seeking to have an order for relief entered with respect to it or its debts; or Milwaukee applies for, or consents to or acquiesces in, the appointment of a receiver, trustee, custodian or other similar official for Milwaukee or for all or a substantial part of its property; or Milwaukee makes an assignment for the benefit of creditors.

6.1.6    An involuntary petition, case, proceeding or other action is commenced against Milwaukee under any bankruptcy law or similar laws or seeking reorganization, arrangement, readjustment of its debts or any other relief under any existing or future law of any Governmental Body relating to bankruptcy, insolvency, reorganization or relief of debtors; a receiver, trustee, custodian, or other similar official is involuntarily appointed for Milwaukee or for all or a substantial part of Milwaukee's property or assets; or any case, proceeding, or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or a substantial part of Milwaukee's property or assets results in the entry of an order for such relief; and any of the foregoing continues for thirty (30) days without being vacated, discharged, stayed, bonded or dismissed.

6.1.7    The happening of any event under any agreement involving the borrowing of money by, or advance of credit to, Milwaukee, which gives to the holder of such obligation the right to accelerate its maturity, whether or not such right is exercised.

6.1.8    Milwaukee is enjoined, restrained or in any way prevented by an order of any Governmental Body from continuing to conduct all or any material part of its business affairs.

6.1.9    Milwaukee takes any action that could result in (a) the merger, reorganization or consolidation of Milwaukee with or into another company in which the stockholders of Milwaukee immediately preceding such merger, reorganization or consolidation (solely by virtue of their shares or other securities of Milwaukee) shall own less than fifty percent (50%) of the voting securities of the surviving company; (b) the sale, transfer or lease

(but not including a transfer or lease by pledge or mortgage to a *bona fide* lender), of all or substantially all the assets of Milwaukee, whether pursuant to a single transaction or a series of related transactions or plan to any entity fifty percent (50%) or more of the voting securities of which are not beneficially owned by all or substantially all of the individuals and entities that were the beneficial owners of Milwaukee voting securities prior to such transaction or transactions; or (c) the sale or transfer, whether in a single transaction or pursuant to a series of related transactions, of securities of Milwaukee representing more than a majority of the voting power of all security holders of Milwaukee.

6.1.10  For any reason after the execution and delivery hereof, any provision of this Agreement or the Escrow Agreement ceases to be in full force and effect.

6.1.11  Milwaukee attempts to misappropriate the Funds, or misrepresent its rights with respect to the Funds in the sole and absolute discretion of Renaissance.

6.2     <u>Remedies Upon Default</u>.  Upon the occurrence of any default, Renaissance may take any or all of the following actions after Milwaukee fails to cure any notice of default:

6.2.1  Immediately withdraw the Funds from the Account;

6.2.2  Terminate this Agreement, the Escrow Agreement and any and all agreements with Milwaukee relating to the Funds or the transactions contemplated by this Agreement, in which event this Agreement shall forthwith become void and have no effect, and all further obligations of the parties under this Agreement shall terminate without further liability or obligation of any party to the other; *provided, however*, that each party shall remain obligated for any breach by such party of this Agreement; and

6.2.3  Proceed to do all other things provided by law, equity or contract to enforce its rights under this Agreement and to collect any and all amounts owning to Renaissance.

6.3     <u>Remedies Cumulative</u>.  The rights and remedies of Renaissance herein are cumulative, and are not exclusive of any other rights, powers, privileges or remedies, now or hereafter existing, at law, in equity or otherwise.  Renaissance may, at its option, exercise any one or more of such rights and remedies individually, partially, or in any combination from time to time.

7.      <u>Confidentiality</u>. Each party shall keep all Confidential Information of the other party, the terms of this Agreement, and any information relating to the negotiation or performance of this Agreement strictly confidential and may not reveal to any third party (except its legal counsel solely for the purpose of providing legal advice relating to this Agreement) any of the foregoing information without the prior written approval of the other party.  The receiving party may disclose Confidential Information to the extent required to be disclosed by a court or governmental agency pursuant to a statute, regulation or valid order; provided that the receiving party first notifies the disclosing party and gives it the opportunity to seek a protective order or to contest such required disclosure.

9

8.     Indemnification.   Milwaukee agrees to indemnify, defend, protect and hold Renaissance and its Affiliates, subsidiaries, officers, directors, shareholders, employees, agents, representatives and their successors and assigns, free and harmless from and against, any and all expenses and losses incurred or suffered by them relating to or arising out of or in connection with (a) claims of third parties claiming compensation, commission or expenses for services as a broker or finder related to this Agreement, the other Transaction Documents or the transactions contemplated thereby; (b) any breach of or any inaccuracy in any representation or warrant made by Milwaukee in this Agreement or any other Transaction Document; and (c) any breach of or failure by Milwaukee to perform any covenant or obligation of Milwaukee set forth or contemplated in this Agreement or any other Transaction Document.

9.     Miscellaneous.

9.1     Compliance with Law.   All agreements between Milwaukee and Renaissance, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, shall the amount paid, or agreed to be paid, to Renaissance thereof for the use, forbearance or detention of the money to be loaned hereunder or otherwise, exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever fulfillment of any provision of this Agreement or of any other document evidencing, securing or pertaining to the obligations evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstances Renaissance shall ever receive anything of value as deemed interest by applicable law under this Agreement or any other document evidencing, securing or pertaining to the indebtedness evidenced hereby or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal obligations owing under this Agreement or on account of any indebtedness of Milwaukee to Renaissance relating to this Agreement or otherwise, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal obligations under this Agreement and such other indebtedness, such excess shall be refunded to Milwaukee. In determining whether or not the interest paid or payable with respect to any obligations of Milwaukee to Renaissance, under any specific contingency, exceeds the highest lawful rate, Milwaukee and Renaissance shall, to the maximum extent permitted by applicable law, characterize any non-principal payment as an expense, fee or premium rather than as interest. The terms and provisions of this paragraph shall control and supersede every other conflicting provision of all agreements between Milwaukee and Renaissance.

9.2     Notices.  All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed given if delivered personally or three (3) days after mailing by certified or registered mail, postage prepaid, return receipt requested, to the parties or their successors in interest at the following addresses, or at such other addresses as the parties may designate by written notice in the manner aforesaid:

If to Milwaukee:          Milwaukee McPherson LLC
                          850 Old Willow
                          Prospect Heights, IL  60070
                          Attention: Carlos Meza, CEO
                          Telephone: (312) 671-8205
                          Facsimile: (312) 276-4287

Electronic mail: Milwaukeemcphersonllc@gmail.com

With copies (which shall not constitute notice) to:

Law Offices of Matthew E. Gurvey, P.C.
111 W. Washington, Suite 841
Chicago, IL 60602
Attention: Matthew E. Gurvey, Esq.
Telephone: (312) 924-5790
Facsimile: (312) 924-9109
Electronic Mail: mgurvey@gurveylawpc.com

If to Renaissance:

Renaissance Capital Group, LLC
2625 Townsgate Road, Suite 330
Westlake Village, California 91361
Attention: Robert Adams, Managing Director
Telephone: (805) 379-2100
Facsimile: (805) 435-3701
Electronic mail: BobAdams@CapitalGroupWestlake.com

With copies (which shall not constitute notice) to:

Stubbs Alderton & Markiles, LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA 91403
Attention: V. Joseph Stubbs, Esq.
Telephone: (818) 444-4507
Facsimile: (818) 444-4520
Electronic mail: jstubbs@biztechlaw.com

9.3     **Survival of Agreements**.  All covenants, agreements, representations and warranties made in this Agreement or any agreement, certificate or instrument delivered to Renaissance pursuant to or in connection with this Agreement shall survive the execution and delivery of this Agreement, and all statements contained in any certificate or other instrument delivered by Milwaukee hereunder or in connection herewith shall be deemed to constitute representations and warranties made by Milwaukee.

9.5     **Assignment**. This Agreement may not be assigned by Milwaukee to any Person without the express written approval of Renaissance and any such attempt at assignment shall be null and void.  Renaissance may freely assign this Agreement, and its rights and obligations hereunder, without the prior written consent of Milwaukee.

9.6     **Third-Party Beneficiaries**.  The parties hereto acknowledge and agree that any assignee of Renaissance hereunder is a direct beneficiary with respect to each provision of this Agreement and may enforce each of its provisions as if it were a party hereto.  Except as set forth in the preceding sentence, this Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein expressed or implied shall give or be construed to give

to any Person, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

9.7    Time is of the essence.    In performance of all conditions in this agreement, time is of material significance and importance.

9.8    Limit of Liability.    In the event Milwaukee makes any claim against Renaissance or in any way relating to this Agreement, Renaissance's aggregate liability (for all claims), including, but not limited to attorneys' fees, other costs and expenses, and other damages shall be limited to the actual total amount of compensation received by Renaissance pursuant to this Agreement.

9.9    No Joint Venture.    It is expressly understood that the parties are acting as independent contractors hereunder and not as an agent or representative of the other. This Agreement does not constitute a joint venture. Neither party shall enter into any contract or commitment on behalf of the other.

9.10    Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California without regard to conflicts of law principles.

9.11    Submission to Jurisdiction and Venue.    Solely for purposes of this Agreement and the transactions contemplated hereby, the parties to this Agreement each hereby agree that any and all disputes, legal actions, suits, or proceedings arising out of or relating to this Agreement or the transactions contemplated hereby, whether legal or equitable in nature, or arising out of contract or tort claims, may be brought in any California or federal court located in the Counties of Ventura or Los Angeles, State of California, United States of America. By their signature to this Agreement, each party, regardless of their residence, irrevocably submits to the jurisdiction of the courts located in the Counties of Ventura or Los Angeles, State of California, United States of America, in any dispute, legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

9.12    Waiver of Immunity and Inconvenient Forum.    Milwaukee irrevocably waives all claims of inconvenient forum and immunity from jurisdiction, attachment and execution, whether on the basis of sovereignty or otherwise, to which it might otherwise be entitled in any legal action or proceeding in any state or federal court of competent jurisdiction, including such courts located in the State of California, arising out of this Agreement.

9.13    Service of Process.    Each party hereto agrees that service of any process, summons, notice or document by U.S. registered mail or the foreign equivalent of U.S. registered mail to such party's respective addresses set forth in this Agreement shall be effective service of process for any action, suit or proceeding in California with respect to any matters to which it has submitted to jurisdiction in Section 9.11 or if otherwise made in accordance with applicable law.

9.14    Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same instrument.

12

9.15    Complete Agreement. This Agreement and the documents delivered or to be delivered pursuant to this Agreement, contain or will contain the entire agreement between the parties hereto with respect to the transactions contemplated herein and shall supersede all previous oral and written and all contemporaneous oral negotiations, commitments, and understandings.

9.16    Amendments and Waivers. This Agreement may not be amended or modified without the written consent of the parties hereto. No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

9.17    Interpretation. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

9.18    No Adverse Construction. The rule that a contract is to be construed against the party drafting the contract is hereby waived, and shall have no applicability in construing this Agreement or any term of this Agreement.

9.19    Severability. Any provision of this Agreement which is invalid, illegal, or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal, or unenforceable in any other jurisdiction.

9.20    Enforcement. In the event of any action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to such party's reasonable costs and expenses of enforcement including, without limitation, reasonable attorneys' fees.

9.21    Rights to Injunctive Relief Remedies. Milwaukee acknowledges that remedies at law may be inadequate to provide full compensation in the event of a material breach relating to Milwaukee's obligations, representations, and warranties hereunder, and Renaissance shall therefore be entitled to seek injunctive relief in the event of any such material breach.

9.22    Successors and Assigns. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of, and be binding upon, their respective successors, permitted assigns and legal representatives.

9.23    Non-Reliance; Assessment and Understanding. Each party represents to the other parties that such party is acting for such party's own account, and such party has made its own independent decisions to enter into this Agreement and the transactions contemplated

13

hereby and as to whether this Agreement and the transactions contemplated hereby are appropriate or proper for such party based on his or its own judgment and upon advice from such advisors as such party has deemed necessary. No party is relying on any communication (written or oral) of any other party as investment advice or as a recommendation to enter into this Agreement and transactions contemplated hereby; it being understood that information and explanations related to the terms and conditions of this Agreement and the transactions contemplated hereby shall not be considered investment advice or a recommendation to enter into this Agreement and the transactions contemplated hereby. No communication (written or oral) received by a party from any other party shall be deemed to be an assurance or guarantee as to the expected result of this Agreement or the transactions contemplated hereby.

        9.24    <u>Further Assurances</u>. Each party will take such further actions, and will execute and deliver such further documents, as the other shall reasonably request to facilitate the consummation of the transactions contemplated by this Agreement. Neither party will take any action, or execute or deliver any document that is inconsistent with the transactions contemplated by this Agreement.

        IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be signed as of the date first above written.

**MILWAUKEE MCPHERSON LLC**
an Illinois limited liability company

By: _____
    Name: Carlos Meza
    Title: CEO


**RENAISSANCE CAPITAL GROUP LLC**
a Nevada limited liability company

By: _____
    Name: Robert Adams
    Title: Managing Director

14

<u>Exhibit A</u>

**Commitment Letter**

# RENAISSANCE CAPITAL GROUP

*2625 Townsgate Road, Suite 330, Westlake Village, CA 91361*
Tel: 805-379-2100 Fax: 805-435-3701
*Email: BobAdams@CapitalGroupWestlake.com*

October __, 2012

Carlos Meza, CEO
Milwaukee McPherson LLC
850 Old Willow
Prospect Heights, IL 60070
Telephone: (312) 671-8205
Facsimile: (312) 276-4287
Electronic mail: Milwaukeemcphersonllc@gmail.com

RE: <u>Renaissance COMMITMENT</u>

Dear Mr. Meza:

RENAISSANCE CAPITAL GROUP, on behalf of itself, its subsidiaries, affiliates, and assigns ("*Renaissance*") hereby irrevocably commits to:

1.  Make Funds in the amount of Twenty Five Million U.S. Dollars ($25,000,000) ("*Funds*") conditionally available for a permitted investment as further defined in that certain Joint Participation Agreement between Renaissance and Milwaukee McPherson LLC (identified therein as "*Milwaukee*") dated October __, 2012 ("*JPA*"), provided such permitted investment does not place Renaissance *'s* Funds and Renaissance *'s* Account at any greater custodial or investment risk, or risk of identity theft than they enjoy in their own Bank account.

2.  Direct the Bank to pay all net profits or returns from the Permitted Investment into a separate account, and provide that account with irrevocable instructions to pay the Milwaukee Returns, as defined in the JPA, by wire transfer of immediately available funds, to an account designated in writing by Milwaukee.

3.  Renaissance hereby commits to a "second bite" provision, wherein, in the event the Milwaukee chosen investment should fail to perform for any reason, Renaissance shall make the Funds available for a similar transaction within one full year from the date of this letter, as further defined in the JPA. In the event that there has been a lapse in

participation payments pursuant to Section 3.3 of the JPA, it shall not be necessary to make back participation payments, but only to resume the Participation Payments prior to initiating the "second bite" provision.

4. Subject to current availability, Renaissance hereby commits to make additional funds available for a similar transaction within one full year from the date of this letter, under similar terms as further defined in the JPA.

Renaissance further confirms that the Funds proffered are fully compliant as good, clean, legitimately earned or obtained, and of non-criminal, non-terrorist, non-drug related origin.

Sincerely,
**RENAISSANCE CAPITAL GROUP LLC**
a Nevada limited liability company


Robert Adams, Managing Director

## JOINT PARTICIPATION AGREEMENT

THIS JOINT PARTICIPATION AGREEMENT ("*Agreement*") is made and entered into as of the 8th day of June, 2012 by and between Milwaukee McPherson LLC, an Illinois limited liability company (identified herein as "*Milwaukee*"); and Renaissance Capital Group LLC, a Nevada Limited liability company, on behalf of itself and its subsidiaries, affiliates, successors and assigns (collectively, "*Renaissance*").

### RECITALS:

A.       Renaissance, or its nominee, has or can immediately obtain Five Million U.S. Dollars ($5,000,000) in immediately available funds (the "*Funds*") pursuant to the terms and conditions of this Agreement.

B.       Milwaukee is an accredited investor that desires to have conditional access to the Funds to facilitate a certain specific permitted investment subject to the conditions set forth in this Agreement.

C.       To facilitate the permitted investment proposed by Milwaukee, Renaissance agrees to confirm the Funds on deposit at the Bank initially for a period of twenty eight (28) calendar days and then for a period of up to three hundred sixty four (364) calendar days, subject to the conditions and pursuant to the terms of this Agreement.

D.       Milwaukee intends to pay Renaissance an Initiation Fee of Two Hundred Thousand U.S. Dollars ($200,000) for the conditional use of the Funds for the initial twenty eight (28) calendar days, as set forth in this Agreement and Participation Fees for the further conditional use of funds as set forth in this Agreement and as further described below, in consideration of Renaissance's performance of its obligations pursuant to this Agreement.

### AGREEMENT:

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the adequacy and legal sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties agree as follows:

1.       <u>Defined Terms</u>.  Except as otherwise expressly provided in this Agreement, the following capitalized terms shall have the respective meanings ascribed to them for purposes of this Agreement:

"*Account*" means the account established at the Bank in the name of Renaissance nominee in which Renaissance will cause the Funds to be deposited.

"*Affiliate*" or "*Affiliated*" means, with respect to any specified Person, a Person that, directly or indirectly, through one or more intermediaries, controls or is controlled by, or is under common control with, such specified Person.

"*Bank*" means Credit Suisse, Zurich, Switzerland.

"*Commitment Letter*" means the Renaissance Commitment Letter, substantially in the form of <u>Exhibit A</u> hereto, to be executed and delivered by Renaissance.

1



EXHIBIT
DEFENSE
EXHIBIT 21

"***Confidential Information***" means any information that a party designates as confidential or which the receiving party knows or has reason to know is confidential. Without limiting the foregoing, Confidential Information includes financial, business and technical plans and strategies, client or customer lists and information, inventions, new products, services or technology. Confidential Information does not include information which is: (a) already known by the receiving party at time of disclosure; (b) or becomes, through no act or fault of the receiving party, publicly known; (c) received by the receiving party from a third party without a restriction on disclosure or use; or (d) independently developed by the receiving party without reference to the disclosing party's Confidential Information.

"***Default***" has the meaning set forth in Section 6.1.

"***Deposit Period***" means initially a period of twenty eight (28) calendar days following the delivery of the Renaissance Deliveries, provided that upon payment of the Initiation Fee by Milwaukee and the payment of the Participation Fees by Milwaukee as each may become due, the Deposit Period shall mean a period of up to three hundred sixty four (364) calendar days following the delivery of the Renaissance Deliveries.

"***Designation Letter***" means the Renaissance Designation Letter, substantially in the form of Exhibit B hereto, to be executed and delivered by Renaissance.

"***Escrow Agent***" means Stubbs Alderton & Markiles, LLP.

"***Escrow Agreement***" the Escrow Agreement to be entered into by and among Renaissance, Milwaukee and the Escrow Agent, in the form attached hereto as Exhibit C.

"***Governmental Body***" means any legislature, agency, bureau, branch, department, division, commission, court, tribunal, magistrate, justice, multi-national organization, quasi-governmental body or other similar recognized organization or body of any federal, state, county, municipal, local or foreign government or other similar recognized organization or body exercising similar powers or authority.

"***Initiation Fee***" has the meaning set forth in Section 2.2.

"***Material Adverse Effect***" means a change (or effect) in the condition (financial or otherwise), properties, assets, liabilities, rights, obligations, operations, business or prospects which, individually or in the aggregate, could reasonably be expected to be materially adverse to such condition, properties, assets, liabilities, rights, obligations, operations, business or prospects of Milwaukee.

"***Other Assets***" has the meaning set forth in Section 2.4.

"***Participation Fee***" has the meaning set forth in Section 3.3.

"***Permitted Investment***" has the meaning set forth in Section 3.2.

"***Person***" means any individual, partnership, limited liability company, corporation, association, joint stock company, trust, entity, joint venture, labor organization, unincorporated organization, Governmental Body or other entity.

"*Renaissance Designation Letter*" means the Renaissance letter of designation, substantially in the form of Exhibit B hereto, to be executed and delivered by Renaissance.

"*Returns*" means any distributions, profits, earnings or other payments (other than return of capital) received by Renaissance or Milwaukee with respect to the Funds as a result of a Permitted Investment; provided, however, that Returns shall not include interest accruing on any funds in the Account not resulting directly from a Permitted Investment.

"*Transaction Documents*" has the meaning set forth in Section 4.3.

2.    Deposit of Funds.

2.1    Escrow Agreement.    Concurrently with the execution of this Agreement, Renaissance, Milwaukee and the Escrow Agent will execute and deliver the Escrow Agreement.

2.2    Deposit of Initiation Fee.    As soon as reasonably practicable following execution and delivery of the Escrow Agreement, Milwaukee shall deliver to the Escrow Agent the sum of Two Hundred Thousand U.S. Dollars ($200,000) ("*Initiation Fee*") by wire transfer of immediately available funds for deposit into escrow in accordance with the terms and conditions of the Escrow Agreement and this Agreement.    All payments made to Renaissance pursuant to this Agreement shall be from Milwaukee's own funds, and not third party funds. Upon satisfaction of the conditions specified in Section 2.3, the Initiation Fee will be paid to Renaissance as provided in this Agreement and the Escrow Agreement, and shall be fully earned and non-refundable.

2.3    Deliveries by Renaissance.    As soon as reasonably practicable following the execution and delivery of this Agreement and the payment of the Initiation Fee by Milwaukee, Renaissance will deliver to the Escrow Agent, with a copy to Milwaukee, copies of (collectively, the "*Renaissance Deliveries*"): (a) written confirmation in the form of a current Bank statement, or a letter from the Bank confirming that the Funds are on deposit in the Account, (b), the executed Commitment Letter, and (c) the executed Designation Letter.    Upon Renaissance's satisfaction of the obligations set forth in this Section 2.3, Renaissance will then be entitled to immediate payment of the Initiation Fee and to delivery of its Initiation Fee by the Escrow Agent.

2.4    Maintenance of Funds in the Account.    Subject to the provisions of Section 6 below, Renaissance covenants and agrees to maintain the Funds, or cause the Funds to be maintained, on deposit in the Account until the earlier to occur of (a) the termination of the Deposit Period and (b) such time as Milwaukee notifies Renaissance that the Permitted Investment has been completed and that the Funds are no longer required to be maintained in the Account.    The parties acknowledge and agree that Renaissance may deposit other funds or assets ("*Other Assets*") in the Account in addition to the Funds deposited pursuant to this Agreement. Milwaukee will not receive income or returns with respect to any of the other funds or assets in the Account that may be deposited in addition to the Funds deposited pursuant to this Agreement.    Any income or returns with respect to any Other Assets is to be paid to Renaissance.

3.    Use of Funds.    Milwaukee will have conditional access to the Funds and the Account to the extent set forth in this Section 3.

3

3.1     Conditional Access.   Milwaukee shall at all times guard against theft of identity concerning the Funds and the Account, and/or the Account holder, and/or the interest earned on the Funds.   Any transmission of Account information shall be done only with the express prior written permission of Renaissance, and only to the attorney, bank, accounting firm, or brokerage firm of the Milwaukee designated Person conducting a Permitted Investment, after first obtaining the written agreement from such Person and the written approval of Renaissance of such written agreement, to treat the above mentioned information as confidential and not to re-convey same to any other Person.   The company name, officer name and title, address, telephone and fax of any party receiving such information shall be provided to Renaissance.

3.2     Permitted Investment.   At any time during the term of this Agreement and after payment of the Initiation Fee and all other amounts required hereunder to Renaissance, the Funds may be used solely for the investment opportunity which has been disclosed in writing and approved by Renaissance prior to making such investment as provided in this Agreement (the "*Permitted Investment*").   The Permitted Investment shall be a transaction in which the Funds are exposed to no greater investment or custodial risk than the Funds enjoy in the Account.   The Account is at all times maintained in a non-depletion condition, with the Bank being responsible for maintaining same.   Milwaukee represents and warrants that Milwaukee is able to conduct or arrange for, certain principal risk free transactions, without exposing the Funds to any risk whatsoever, and without incurring any lien, claim, encumbrance, additional signatory, additional management agreement or right of offset on the Funds.   The Funds may be encumbered, blocked, or exchanged, but only upon Renaissance receipt of an irrevocable Bank undertaking, or other investment grade (A1/P1) obligation, acceptable to Renaissance in its sole and exclusive determination.   The parties acknowledge and agree that Other Assets may, at the sole and absolute discretion of Renaissance, be utilized to make the Permitted Investment along with the Funds.

3.3     Renaissance Participation Payments.   As additional consideration for performance by Renaissance of its obligations hereunder, Milwaukee shall pay to Renaissance, by wire-transfer of immediately available funds to an account designated by Renaissance, Fifty Thousand U.S. Dollars ($50,000) per each twenty eight (28) calendar day period, payable in advance (a "*Participation Fee*").   Each Participation Payment is due and payable to Renaissance during the Deposit Period three (3) calendar days prior to the beginning of each twenty eight (28) day period.   Payment shall be deemed made when actually received by Renaissance and shall be fully earned and non-refundable upon Renaissance's satisfaction of the conditions specified herein.   Milwaukee shall be entitled to receive all Returns from the Permitted Investment, except for the Participation Fee or as otherwise provided in this Agreement.   For avoidance of doubt, if Renaissance maintains Other Assets in the Account and any such Other Assets are used for a Permitted Investment, then the amount of Returns which Milwaukee is entitled to receive hereunder shall be solely those returns (less any Participation Fees and other amounts due Renaissance hereunder) attributable to the Funds, calculated based on the proportion which the Funds represent of the total Funds and Other Assets utilized for the Permitted Investment.

3.4     Obligations of Milwaukee.   In making any representation to any Person concerning the Funds, Milwaukee shall in each and every instance fully disclose: (a) to such Person the restrictions and limitations on Milwaukee and its access to the Funds as specified in this Agreement, and (b) to Renaissance, the complete company name, officer name and title, address, telephone and fax of each Person Milwaukee may be dealing with, with respect to the

Funds. Without the express, written and advance approval by Renaissance (which approval may be withheld by Renaissance in its sole and absolute discretion), Milwaukee shall not, nor make any attempt to, whether directly or indirectly, use, access, transfer any of the Funds, contact the Bank or signatories to the account in which the funds are located, or subject (or cause to be subjected) any of the Funds to any claim, security interest, lien, encumbrance, risk, call, hypothecation or other adverse interest or claim whatsoever.

        3.5     Non-permitted Uses of Funds or Account Information. Milwaukee covenants and agrees not to engage in any of the following activities or actions with respect to the Funds, the Account or Account information: (a) any activity of any kind which is not expressly permitted by this Section 3, (b) the publication, circulation or disclosure of the Funds or Renaissance Account information to any party except as permitted herein, and (c) any activity which places the Funds or Account at risk of any kind.

        3.6     Interest Income and Taxes. As between Milwaukee and Renaissance, Renaissance shall be entitled to any and all interest income accruing from any Funds in the Account and be responsible for any income tax deriving from such interest income.

        3.7     Trading Income. Subject to the terms and conditions of this Agreement, as between Milwaukee and Renaissance, Milwaukee shall be entitled to all the trading income resulting from the Permitted Investment utilizing Renaissance's commitment to deposit Funds of Five Million U.S. Dollars ($5,000,000) in the Account. Milwaukee shall be responsible for any income tax deriving from such trading income.

        3.8     Failure to Pay Fees Due. In the event Milwaukee fails to make timely payment of the Initiation Fee, any Participation Fee, or any payments under this Agreement, such failure shall constitute a Default under Section 6 of this Agreement and Renaissance may withdraw the Funds from the Account. Milwaukee shall be obligated to immediately return any documents received from Renaissance and to notify all parties who have received documents from Milwaukee that the transaction has been terminated. Thereafter, unless a Permitted Investment has occurred, Milwaukee shall have no further liability to Renaissance as to payment of the Participation Fees.

        3.9     Return of Funds. Upon termination of the Deposit Period or as otherwise provided herein, Renaissance shall be free to immediately withdraw Funds from the Account without restriction hereunder and Renaissance shall have no further obligations hereunder. Regardless of whether Milwaukee receives the Funds for the Permitted Investment or the Funds are returned to Renaissance for any reason, the Initiation Fee and Participation Fee(s) shall be non-refundable and fully earned upon Renaissance's satisfaction of its obligations described in Section 2.3 and Section 2.4.

        4.     Representations and Warranties of Milwaukee. Milwaukee hereby represents and warrants to Renaissance that:

        4.1     Organization and Corporate Authority. Milwaukee is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Illinois. Milwaukee has full corporate power and authority to own and hold its properties and to carry on its business as now conducted and as proposed to be conducted, to execute, deliver and perform this Agreement.

5

4.2    Authorization; No Conflict; No Violation.  Milwaukee's execution and delivery of this Agreement and performance of its obligations hereunder, have been duly authorized by all requisite corporate action and will not (a) result in a violation of Milwaukee's articles of organization or bylaws, (b) result in a violation of any applicable law, rule or regulation, or any order, injunction, judgment or decree of any Governmental Body, (c) conflict with, result in a breach of, or constitute (or, with due notice or lapse of time or both, would constitute) a default under, or give rise to any right of termination, acceleration or cancellation under, any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Milwaukee or any of its properties or assets is bound, or (d) require any consent, approval, notification, waiver or other similar action from any third party. No provision of this Agreement violates, conflicts with, results in a breach of or constitutes (or, with due notice or lapse of time or both, would constitute) a default by any other party under any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Milwaukee is a party.

4.3    Validity.  This Agreement, the Escrow Agreement and any documents, certificates or other instruments to be executed and delivered by Milwaukee in connection herewith (collectively, the "*Transaction Documents*") have been (or will be) duly executed and delivered by Milwaukee and constitute (or will constitute) the legal, valid and binding obligation of Milwaukee, enforceable against it in accordance with their respective terms, except: (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

4.4    Regulatory Approvals.  All consents, approvals, authorizations and other requirements prescribed by any law, rule or regulation which must be obtained or satisfied by Milwaukee and that are necessary for the execution, delivery and performance by Milwaukee of this Agreement and the other Transaction Documents, and that are necessary for the consummation of the transactions contemplated hereby, have been obtained and satisfied.

4.5    No Litigation. There are no actions, suits, investigations or proceedings (judicial, administrative or otherwise) pending or, to the best knowledge of Milwaukee, threatened against Milwaukee, or any property of Milwaukee, in any court or before any Governmental Body.

4.6    Compliance with Law.  Milwaukee has complied with all laws, rules, regulations and orders applicable to its business, operations, properties, assets, products and services.  Milwaukee has all necessary permits, licenses and other authorizations required to conduct its business as conducted and as proposed to be conducted, and Milwaukee has operated its business pursuant to and in compliance with the terms of all such permits, licenses and other authorizations.  There is no existing law, rule, regulation or order, and Milwaukee (after due inquiry) is not aware of any proposed law, rule, regulation or order of any Governmental Body which would prohibit or restrict Milwaukee from, or otherwise adversely affect Milwaukee in, conducting its business in any jurisdiction in which it is now conducting business or in which it proposes to conduct business.

4.7    Adequacy of Consideration; Solvency.  The consideration to be paid by Milwaukee under this Agreement and the other Transaction Documents constitutes fair and

adequate consideration to Milwaukee. Milwaukee does not intend, by executing and delivering this Agreement or entering into any transactions contemplated hereby, to hinder, delay or defraud any Person to whom Milwaukee is indebted or will become indebted. Milwaukee is solvent and able to pay and discharge its obligations when and as they become due and the transactions contemplated by this Agreement and the other Transaction Documents will not result in Milwaukee becoming insolvent.

        4.8    <u>Preexisting Relationship; Capacity</u>. Milwaukee either (a) has a preexisting personal or business relationship with Renaissance within the meaning of Section 25118 of the *California Corporations Code* and/or (b) by reason of its own business and financial experience or that of its professional advisers, has the capacity to protect its own interest in connection with the transactions contemplated by this Agreement and the other Transaction Documents to be executed and delivered pursuant hereto, within the meaning of Section 25118 of the *California Corporations Code*.

        4.9    <u>Disclosure</u>. No representation, statement or information contained in this Agreement or any agreement, certificate or other instrument executed in connection herewith or delivered pursuant hereto, or made available or furnished to Renaissance or its representatives by Milwaukee, contains or will contain any untrue statement of a material fact or omits or will omit any material fact necessary to make the information contained therein not misleading.

        5.    <u>Representations and Warranties of Renaissance</u>. Renaissance hereby represents and warrants to Milwaukee that:

        5.1    <u>Organization and Corporate Authority</u>. Renaissance is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Nevada. Renaissance has full corporate power and authority to own and hold its properties and to carry on its business as now conducted and as proposed to be conducted, to execute, deliver and perform this Agreement.

        5.2    <u>Authorization; No Conflict; No Violation</u>. Renaissance's execution and delivery of this Agreement and performance of its obligations hereunder, have been duly authorized by all requisite corporate action and will not (a) result in a violation of Renaissance's articles of organization or bylaws, (b) result in a violation of any applicable law, rule or regulation, or any order, injunction, judgment or decree of any Governmental Body, (c) conflict with, result in a breach of, or constitute (or might constitute with due notice or lapse of time or both) a default under, or give rise to any right of termination, acceleration or cancellation under, any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Renaissance or any of its properties or assets is bound, or (d) require any consent, approval, notification, waiver or other similar action from any third party. No provision of this Agreement violates, conflicts with, results in a breach of or constitutes (or, with due notice or lapse of time or both, would constitute) a default by any other party under any indenture, agreement, contract, license, arrangement, understanding, evidence of indebtedness, note, lease or other instrument to which Renaissance is a party.

        5.3    <u>Validity</u>. This Agreement and any documents to be executed and delivered by Renaissance in connection herewith have been duly executed and delivered by Renaissance and constitute the legal, valid and binding obligation of Renaissance, enforceable against Renaissance in accordance with their respective terms, except: (a) as limited by

applicable bankruptcy, insolvency, reorganization, moratorium, and other laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

6.  Default and Remedies.

6.1  Defaults. The occurrence of any one or more of the following events, acts or occurrences shall constitute an event of default (each, a "*Default*") under this Agreement:

6.1.1  Milwaukee fails to make any payment to Renaissance when due as contemplated under this Agreement and such failure shall have continued for two (2) business days after notice from Renaissance to Milwaukee.

6.1.2  Milwaukee fails to fully and promptly perform when due, or comply with, any agreement, covenant, term or condition binding on it contained in this Agreement and such failure shall have continued for three (3) business days after notice from Renaissance to Milwaukee.

6.1.3  Any representation or warranty made or deemed made by Milwaukee in the Transaction Documents or in any writing furnished in connection with or pursuant to this Agreement, or any report, certificate or other information provided by Milwaukee to Renaissance in connection with or pursuant to this Agreement, shall be false or misleading in any material respect on the date when made or when deemed made or repeated.

6.1.4  Milwaukee is unable to pay its debts as they mature or admits in writing its inability to pay its debts as they mature.

6.1.5  Milwaukee liquidates or dissolves or the business of Milwaukee is suspended; Milwaukee files or commences a voluntary petition, case proceeding or other action seeking reorganization, arrangement, readjustment of its debts or any other relief under any existing or future law of any jurisdiction, domestic or foreign, state or federal, relating to bankruptcy, insolvency, reorganization or relief of debtors, or Milwaukee takes any other action indicating its consent to, approval of, or acquiescence in, any such petition, case, proceeding or other action seeking to have an order for relief entered with respect to it or its debts; or Milwaukee applies for, or consents to or acquiesces in, the appointment of a receiver, trustee, custodian or other similar official for Milwaukee or for all or a substantial part of its property; or Milwaukee makes an assignment for the benefit of creditors.

6.1.6  An involuntary petition, case, proceeding or other action is commenced against Milwaukee under any bankruptcy law or similar laws or seeking reorganization, arrangement, readjustment of its debts or any other relief under any existing or future law of any Governmental Body relating to bankruptcy, insolvency, reorganization or relief of debtors; a receiver, trustee, custodian, or other similar official is involuntarily appointed for Milwaukee or for all or a substantial part of Milwaukee's property; or any case, proceeding, or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or a substantial part of Milwaukee's property or assets results in the entry of an order for such relief; and any of the foregoing continues for thirty (30) days without being vacated, discharged, stayed, bonded or dismissed.

Case: 1:17-cr-00281 Document #: 59-1 Filed: 12/01/18 Page 25 of 53 PageID #:261

6.1.7   The happening of any event under any agreement involving the borrowing of money by, or advance of credit to, Milwaukee, which gives to the holder of such obligation the right to accelerate its maturity, whether or not such right is exercised.

6.1.8   Milwaukee is enjoined, restrained or in any way prevented by an order of any Governmental Body from continuing to conduct all or any material part of its business affairs.

6.1.9   Milwaukee takes any action that could result in (a) the merger, reorganization or consolidation of Milwaukee with or into another company in which the stockholders of Milwaukee immediately preceding such merger, reorganization or consolidation (solely by virtue of their shares or other securities of Milwaukee) shall own less than fifty percent (50%) of the voting securities of the surviving company; (b) the sale, transfer or lease (but not including a transfer or lease by pledge or mortgage to a *bona fide* lender), of all or substantially all the assets of Milwaukee, whether pursuant to a single transaction or a series of related transactions or plan to any entity fifty percent (50%) or more of the voting securities of which are not beneficially owned by all or substantially all of the individuals and entities that were the beneficial owners of Milwaukee voting securities prior to such transaction or transactions; or (c) the sale or transfer, whether in a single transaction or pursuant to a series of related transactions, of securities of Milwaukee representing more than a majority of the voting power of all security holders of Milwaukee.

6.1.10 For any reason after the execution and delivery hereof, any provision of this Agreement or the Escrow Agreement ceases to be in full force and effect.

6.1.11 Milwaukee attempts to misappropriate the Funds, or misrepresent its rights with respect to the Funds in the sole and absolute discretion of Renaissance.

6.2   <u>Remedies Upon Default</u>.   Upon the occurrence of any default, Renaissance may take any or all of the following actions after Milwaukee fails to cure any notice of default:

6.2.1   Immediately withdraw the Funds from the Account;

6.2.2   Terminate this Agreement, the Escrow Agreement and any and all agreements with Milwaukee relating to the Funds or the transactions contemplated by this Agreement, in which event this Agreement shall forthwith become void and have no effect, and all further obligations of the parties under this Agreement shall terminate without further liability or obligation of any party to the other; *provided*, *however*, that each party shall remain obligated for any breach by such party of this Agreement; and

6.2.3   Proceed to do all other things provided by law, equity or contract to enforce its rights under this Agreement and to collect any and all amounts owning to Renaissance.

6.3   <u>Remedies Cumulative</u>.   The rights and remedies of Renaissance herein are cumulative, and are not exclusive of any other rights, powers, privileges or remedies, now or hereafter existing, at law, in equity or otherwise.   Renaissance may, at its option, exercise any

one or more of such rights and remedies individually, partially, or in any combination from time to time.

7.    Confidentiality. Each party shall keep all Confidential Information of the other party, the terms of this Agreement, and any information relating to the negotiation or performance of this Agreement strictly confidential and may not reveal to any third party (except its legal counsel solely for the purpose of providing legal advice relating to this Agreement) any of the foregoing information without the prior written approval of the other party. The receiving party may disclose Confidential Information to the extent required to be disclosed by a court or governmental agency pursuant to a statute, regulation or valid order; provided that the receiving party first notifies the disclosing party and gives it the opportunity to seek a protective order or to contest such required disclosure.

8.    Indemnification. Milwaukee agrees to indemnify, defend, protect and hold Renaissance and its Affiliates, subsidiaries, officers, directors, shareholders, employees, agents, representatives and their successors and assigns, free and harmless from and against, any and all expenses and losses incurred or suffered by them relating to or arising out of or in connection with (a) claims of third parties claiming compensation, commission or expenses for services as a broker or finder related to this Agreement, the other Transaction Documents or the transactions contemplated thereby; (b) any breach of or any inaccuracy in any representation or warrant made by Milwaukee in this Agreement or any other Transaction Document; and (c) any breach of or failure by Milwaukee to perform any covenant or obligation of Milwaukee set forth or contemplated in this Agreement or any other Transaction Document.

9.    Miscellaneous.

9.1    Compliance with Law. All agreements between Milwaukee and Renaissance, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, shall the amount paid, or agreed to be paid, to Renaissance thereof for the use, forbearance or detention of the money to be loaned hereunder or otherwise, exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever fulfillment of any provision of this Agreement or of any other document evidencing, securing or pertaining to the obligations evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law then, *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstances Renaissance shall ever receive anything of value as deemed interest by applicable law under this Agreement or any other document evidencing, securing or pertaining to the indebtedness evidenced hereby or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal obligations owing under this Agreement or on account of any indebtedness of Milwaukee to Renaissance relating to this Agreement or otherwise, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal obligations under this Agreement and such other indebtedness, such excess shall be refunded to Milwaukee. In determining whether or not the interest paid or payable with respect to any obligations of Milwaukee to Renaissance, under any specific contingency, exceeds the highest lawful rate, Milwaukee and Renaissance shall, to the maximum extent permitted by applicable law, characterize any non-principal payment as an expense, fee or premium rather than as interest. The terms and provisions of this paragraph shall control and supersede every other conflicting provision of all agreements between Milwaukee and Renaissance.

9.2    Notices. All notices, requests, demands, and other communications hereunder shall be in writing and shall be deemed given if delivered personally or three (3) days after mailing by certified or registered mail, postage prepaid, return receipt requested, to the parties or their successors in interest at the following addresses, or at such other addresses as the parties may designate by written notice in the manner aforesaid:

If to Milwaukee:            Milwaukee McPherson LLC
                            850 Old Willow
                            Prospect Heights, IL  60070
                            Attention: Carlos Meza, CEO
                            Telephone: (312) 671-8205
                            Facsimile: (312) 276-4287
                            Electronic mail: Milwaukeemcphersonllc@gmail.com

If to Renaissance:          Renaissance Capital Group, LLC
                            2625 Townsgate Road, Suite 330
                            Westlake Village, California  91361
                            Attention: Robert Adams, Managing Director
                            Telephone: (805) 379-2100
                            Facsimile: (805) 435-3701
                            Electronic mail: BobAdams@CapitalGroupWestlake.com

With copies (which shall not constitute notice) to:

                            Stubbs Alderton & Markiles, LLP
                            15260 Ventura Boulevard, 20th Floor
                            Sherman Oaks, CA  91403
                            Attention: V. Joseph Stubbs, Esq.
                            Telephone: (818) 444-4507
                            Facsimile: (818) 444-4520
                            Electronic mail: jstubbs@biztechlaw.com

9.3    Survival of Agreements.  All covenants, agreements, representations and warranties made in this Agreement or any agreement, certificate or instrument delivered to Renaissance pursuant to or in connection with this Agreement shall survive the execution and delivery of this Agreement, and all statements contained in any certificate or other instrument delivered by Milwaukee hereunder or in connection herewith shall be deemed to constitute representations and warranties made by Milwaukee.

9.5    Assignment. This Agreement may not be assigned by Milwaukee to any Person without the express written approval of Renaissance and any such attempt at assignment shall be null and void.  Renaissance may freely assign this Agreement, and its rights and obligations hereunder, without the prior written consent of Milwaukee.

9.6    Third-Party Beneficiaries.  The parties hereto acknowledge and agree that any assignee of Renaissance hereunder is a direct beneficiary with respect to each provision of this Agreement and may enforce each of its provisions as if it were a party hereto.  Except as set forth in the preceding sentence, this Agreement is for the sole benefit of the parties hereto and

their permitted assigns and nothing herein expressed or implied shall give or be construed to give to any Person, other than the parties hereto and such assigns, any legal or equitable rights hereunder.

9.7     Time is of the essence.   In performance of all conditions in this agreement, time is of material significance and importance.

9.8     Limit of Liability.   In the event Milwaukee makes any claim against Renaissance or in any way relating to this Agreement, Renaissance's aggregate liability (for all claims), including, but not limited to attorneys' fees, other costs and expenses, and other damages shall be limited to the actual total amount of compensation received by Renaissance pursuant to this Agreement.

9.9     No Joint Venture.   It is expressly understood that the parties are acting as independent contractors hereunder and not as an agent or representative of the other. This Agreement does not constitute a joint venture. Neither party shall enter into any contract or commitment on behalf of the other.

9.10     Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California without regard to conflicts of law principles.

9.11     Submission to Jurisdiction and Venue.   Solely for purposes of this Agreement and the transactions contemplated hereby, the parties to this Agreement each hereby agree that any and all disputes, legal actions, suits, or proceedings arising out of or relating to this Agreement or the transactions contemplated hereby, whether legal or equitable in nature, or arising out of contract or tort claims, may be brought in any California or federal court located in the Counties of Ventura or Los Angeles, State of California, United States of America. By their signature to this Agreement, each party, regardless of their residence, irrevocably submits to the jurisdiction of the courts located in the Counties of Ventura or Los Angeles, State of California, United States of America, in any dispute, legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.

9.12     Waiver of Immunity and Inconvenient Forum.   Milwaukee irrevocably waives all claims of inconvenient forum and immunity from jurisdiction, attachment and execution, whether on the basis of sovereignty or otherwise, to which it might otherwise be entitled in any legal action or proceeding in any state or federal court of competent jurisdiction, including such courts located in the State of California, arising out of this Agreement.

9.13     Service of Process.   Each party hereto agrees that service of any process, summons, notice or document by U.S. registered mail or the foreign equivalent of U.S. registered mail to such party's respective addresses set forth in this Agreement shall be effective service of process for any action, suit or proceeding in California with respect to any matters to which it has submitted to jurisdiction in Section 9.11 or if otherwise made in accordance with applicable law.

9.14     Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute but one and the same instrument.

9.15 Complete Agreement. This Agreement and the documents delivered or to be delivered pursuant to this Agreement, contain or will contain the entire agreement between the parties hereto with respect to the transactions contemplated herein and shall supersede all previous oral and written and all contemporaneous oral negotiations, commitments, and understandings.

9.16 Amendments and Waivers. This Agreement may not be amended or modified without the written consent of the parties hereto. No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

9.17 Interpretation. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

9.18 No Adverse Construction. The rule that a contract is to be construed against the party drafting the contract is hereby waived, and shall have no applicability in construing this Agreement or any term of this Agreement.

9.19 Severability. Any provision of this Agreement which is invalid, illegal, or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity, illegality, or unenforceability, without affecting in any way the remaining provisions hereof in such jurisdiction or rendering that or any other provision of this Agreement invalid, illegal, or unenforceable in any other jurisdiction.

9.20 Enforcement. In the event of any action to enforce the terms of this Agreement, the prevailing party in such action shall be entitled to such party's reasonable costs and expenses of enforcement including, without limitation, reasonable attorneys' fees.

9.21 Rights to Injunctive Relief Remedies. Milwaukee acknowledges that remedies at law may be inadequate to provide full compensation in the event of a material breach relating to Milwaukee's obligations, representations, and warranties hereunder, and Renaissance shall therefore be entitled to seek injunctive relief in the event of any such material breach.

9.22 Successors and Assigns. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of, and be binding upon, their respective successors, permitted assigns and legal representatives.

9.23 Non-Reliance; Assessment and Understanding. Each party represents to the other parties that such party is acting for such party's own account, and such party has made its own independent decisions to enter into this Agreement and the transactions contemplated

13

hereby and as to whether this Agreement and the transactions contemplated hereby are appropriate or proper for such party based on his or its own judgment and upon advice from such advisors as such party has deemed necessary. No party is relying on any communication (written or oral) of any other party as investment advice or as a recommendation to enter into this Agreement and transactions contemplated hereby; it being understood that information and explanations related to the terms and conditions of this Agreement and the transactions contemplated hereby shall not be considered investment advice or a recommendation to enter into this Agreement and the transactions contemplated hereby. No communication (written or oral) received by a party from any other party shall be deemed to be an assurance or guarantee as to the expected result of this Agreement or the transactions contemplated hereby.

       9.24   <u>Further Assurances</u>. Each party will take such further actions, and will execute and deliver such further documents, as the other shall reasonably request to facilitate the consummation of the transactions contemplated by this Agreement. Neither party will take any action, or execute or deliver any document that is inconsistent with the transactions contemplated by this Agreement.

       IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be signed as of the date first above written.

**MILWAUKEE MCPHERSON LLC**
an Illinois limited liability company

By: _____
    Name: Carlos Meza
    Title: CEO


**RENAISSANCE CAPITAL GROUP LLC**
a Nevada limited liability company

By: _____
    Name: Robert Adams
    Title: Managing Director

<u>Exhibit A</u>

Commitment Letter

# RENAISSANCE CAPITAL GROUP

**2625 Townsgate Road, Suite 330, Westlake Village, CA 91361**
Tel: 805-379-2100 Fax: 805-435-3701
**Email: *BobAdams@CapitalGroupWestlake.com***

June __, 2012

Carlos Meza, CEO
Milwaukee McPherson LLC
850 Old Willow
Prospect Heights, IL 60070
Telephone: (312) 671-8205
Facsimile: (312) 276-4287
Electronic mail: Milwaukeemcphersonllc@gmail.com

**RE:** <u>Renaissance COMMITMENT</u>

Dear Mr. Meza:

RENAISSANCE CAPITAL GROUP, on behalf of itself, its subsidiaries, affiliates, and assigns ("**Renaissance**") hereby irrevocably commits to:

1. Make Funds in the amount of Five Million U.S. Dollars ($5,000,000) ("**Funds**") conditionally available for a permitted investment as further defined in that certain Joint Participation Agreement between Renaissance and Milwaukee McPherson LLC (identified therein as "**Milwaukee**") dated June __, 2012 ("**JPA**"), provided such permitted investment does not place Renaissance's Funds and Renaissance's Account at any greater custodial or investment risk, or risk of identity theft than they enjoy in their own Bank account.

2. Direct the Bank to pay all net profits or returns from the Permitted Investment into a separate account, and provide that account with irrevocable instructions to pay the Milwaukee Returns, as defined in the JPA, by wire transfer of immediately available funds, to an account designated in writing by Milwaukee.

3. Renaissance hereby commits to a "second bite" provision, wherein, in the event the Milwaukee chosen investment should fail to perform for any reason, Renaissance shall make the Funds available for a similar transaction within one full year from the date of this letter, as further defined in the JPA. In the event that there has been a lapse in

participation payments pursuant to Section 3.3 of the JPA, it shall not be necessary to make back participation payments, but only to resume the Participation Payments prior to initiating the "second bite" provision.

4.  Subject to current availability, Renaissance hereby commits to make additional funds available for a similar transaction within one full year from the date of this letter, under similar terms as further defined in the JPA.

Renaissance further confirms that the Funds proffered are fully compliant as good, clean, legitimately earned or obtained, and of non-criminal, non-terrorist, non-drug related origin.

Sincerely,
**RENAISSANCE CAPITAL GROUP LLC**
a Nevada limited liability company


Robert Adams, Managing Director

**Exhibit B**

**Renaissance Designation Letter**

# RENAISSANCE CAPITAL GROUP

*2625 Townsgate Road, Suite 330, Westlake Village, CA 91361*
Tel: 805-379-2100 Fax: 805-435-3701
*Email: BobAdams@CapitalGroupWestlake.com*

June __, 2012

V. Joseph Stubbs, Esq.
Stubbs Alderton & Markiles, LLP
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA 91403
Tel: (818) 444-4507; Fax: (818) 444-4520
Electronic mail: jstubbs@biztechlaw.com

Dear Mr. Stubbs:

Attached, please find a bank statement or bank letter confirming a minimum deposit of Five Million U.S. Dollars ($5,000,000). By this writing, we hereby designate this account and the funds therein as the "Funds" and the "Account" available for a certain permitted investment pursuant to that certain Joint Participation Agreement extant between Renaissance Capital Group, LLC and Milwaukee McPherson LLC (identified therein as *"Milwaukee"*) dated June __, 2012.

Sincerely,

**RENAISSANCE CAPITAL GROUP LLC**
a Nevada Limited liability company


_____

Robert A. Adams, Managing Director

**Exhibit C**

Escrow Agreement

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT is made as of June 8, 2012, by and among Renaissance Capital Group, LLC ("**Renaissance**"), Milwaukee McPherson LLC (identified herein as "**Milwaukee**"); and Stubbs Alderton & Markiles, LLP, ("**SAM**") with an address at 15260 Ventura Boulevard, 20th Floor, Sherman Oaks, CA 91403 ("**Escrow Agent**"). **Capitalized terms used but not defined herein shall have the meanings set forth in the Joint Participation Agreement referred to in the first recital.**

### W I T N E S S E T H:

WHEREAS, concurrently with the execution and delivery hereof, Renaissance and Milwaukee have entered into that certain Joint Participation Agreement ("**Joint Participation Agreement**"); and

WHEREAS, the Joint Participation Agreement provides for Milwaukee to deposit into escrow an Initiation Fee of Two Hundred Thousand U.S. Dollars ($200,000) the ("**Escrow Funds**") to be released from escrow upon satisfaction of certain conditions;

NOW, THEREFORE, in consideration of the covenants and mutual promises contained herein and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties agree as follows:

### ARTICLE 1

### TERMS OF THE ESCROW

1.1.    The parties hereby agree to establish an escrow account with the Escrow Agent whereby the Escrow Agent shall hold the Escrow Funds.

1.2.    Upon the Escrow Agent's receipt of the Escrow Funds into its master escrow account, together with executed counterparts of this Agreement, it shall telephonically advise Renaissance, or Renaissance's designated attorney or agent, of the amount of funds it has received into its master escrow account.

1.3.    Wire transfers to the Escrow Agent shall be made as follows:

|  |  |
|---|---|
| BANK: | FIRST REPUBLIC BANK, A DIVISION OF MERRILL LYNCH BANK & TRUST CO FSB 111 PINE STREET, SAN FRANCISCO, CA 94111 |
| ABA NUMBER: | 321081669 |
| BNF: | STUBBS ALDERTON & MARKILES LLP – ATTORNEY CLIENT TRUST |
| ACCOUNT NUMBER: | 80000168998 |
| REMARK: | RENAISSANCE / MILWAUKEE |

The Escrow Funds shall not be released from escrow hereunder and delivered to Renaissance unless and until: (A) Renaissance delivers to the Escrow Agent, with a copy to Milwaukee, (i) written confirmation in the form of a current bank statement confirming that a minimum of Five

- 1 -

Million U.S. Dollars ($5,000,000) is on deposit in the designated account, (ii) the executed Renaissance Designation Letter (as defined in the Joint Participation Agreement), and (iii) the executed Commitment Letter (as defined in the Joint Participation Agreement), (collectively, the "*Release Condition*") and (B) Renaissance makes a demand for release by delivering the Release Notice as provided in Section 1.5. The parties agree that the Escrow Agent shall have no obligation to verify the validity or authenticity, and no liability for any lack of validity or authenticity, of the documents delivered to the Escrow Agent in accordance with clause (A) of the preceding sentence of this Section 1.4, and the Escrow Agent shall be entitled to rely on such documents as being valid and authentic copies of the documents they purport to be.

1.4     Once the Release Condition has occurred and the Escrow Agent receives a Release Notice confirming the occurrence of the Release Condition, in the form attached hereto as Exhibit X executed by Renaissance and Milwaukee (a copy of which shall be delivered to Milwaukee by Renaissance concurrently with delivery to the Escrow Agent), the Escrow Agent shall release the Escrow Funds to Renaissance in accordance with wire instructions provided by Renaissance to the Escrow Agent.

1.5     In the event that the Release Condition has not occurred on or prior to the date which is thirty (30) days from the date of the deposit of the Initiation Fee into the Escrow Account, the Escrow Agent shall release the Escrow Funds to Milwaukee in accordance with wire instructions provided by Milwaukee to the Escrow Agent.

1.6     Milwaukee hereby agrees to (A) pay the Escrow Agent upon execution of this Escrow Agreement reasonable compensation for the services to be rendered hereunder, as described in Schedule 1 attached hereto, and (B) pay or reimburse the Escrow Agent upon request for all expenses, disbursement and advances, including reasonable attorney's fees, incurred or made by it in connection with the preparation, execution, performance, delivery modification and termination of this Escrow Agreement.


## ARTICLE II

## MISCELLANEOUS

2.1     No waiver or any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of any other covenant or provision herein contained. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act.

2.2     All notices or other communications required or permitted hereunder shall be in writing, and shall be sent as set forth in the Joint Participation Agreement.

2.3     This Escrow Agreement shall be binding upon and shall inure to the benefit of the permitted successors and permitted assigns of the parties hereto.

2.4     This Escrow Agreement is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto. This Escrow Agreement may not be modified, changed,

supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the parties to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein.

2.5     Whenever required by the context of this Escrow Agreement, the singular shall include the plural and masculine shall include the feminine. This Escrow Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if all parties had prepared the same. Unless otherwise indicated, all references to Articles are to this Escrow Agreement.

2.6     The parties hereto expressly agree that this Escrow Agreement shall be governed by, interpreted under and construed and enforced in accordance with the laws of the State of California. Any action to enforce, arising out of, or relating in any way to, any provisions of this Escrow Agreement shall only be brought in a state or Federal court sitting in Los Angeles County.

2.7     The Escrow Agent's duties hereunder may be altered, amended, modified or revoked only by a writing signed by Renaissance, Milwaukee and the Escrow Agent.

2.8     The Escrow Agent shall be obligated only for the performance of such duties as are specifically set forth herein and may rely and shall be protected in relying or refraining from acting on any instrument reasonably believed by the Escrow Agent to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall not be personally liable for any act the Escrow Agent may do or omit to do hereunder as the Escrow Agent while acting in good faith and in the absence of gross negligence, fraud and willful misconduct, and any act done or omitted by the Escrow Agent pursuant to the advice of the Escrow Agent's attorneys-at-law shall be conclusive evidence of such good faith, in the absence of gross negligence, fraud and willful misconduct.

2.9     The Escrow Agent is hereby expressly authorized to disregard any and all warnings given by any of the parties hereto or by any other person or corporation, excepting only orders or process of courts of law and is hereby expressly authorized to comply with and obey orders, judgments or decrees of any court. In case the Escrow Agent obeys or complies with any such order, judgment or decree, the Escrow Agent shall not be liable to any of the parties hereto or to any other person, firm or corporation by reason of such decree being subsequently reversed, modified, annulled, set aside, vacated or found to have been entered without jurisdiction.

2.10    The Escrow Agent shall not be liable in any respect on account of the identity, authorization or rights of the parties executing or delivering or purporting to execute or deliver the Joint Participation Agreement or any documents or papers deposited or called for thereunder in the absence of gross negligence, fraud and willful misconduct.

2.11    The Escrow Agent shall be entitled to employ such legal counsel and other experts as the Escrow Agent may deem necessary properly to advise the Escrow Agent in connection with the Escrow Agent's duties hereunder, may rely upon the advice of such counsel, and may pay such counsel reasonable compensation; provided that the costs of such compensation shall be borne by the Escrow Agent. **The Escrow Agent has acted as legal counsel for Renaissance, and may continue to act as legal counsel for the Renaissance from time to time, notwithstanding its duties as the Escrow Agent hereunder. Milwaukee consents to the Escrow Agent in such capacity as legal counsel for Renaissance and waives**

**any claim that such representation represents a conflict of interest on the part of the Escrow Agent. Milwaukee understands that Renaissance and the Escrow Agent are relying explicitly on the foregoing provision in entering into this Escrow Agreement.**

2.12     The Escrow Agent's responsibilities as escrow agent hereunder shall terminate if the Escrow Agent shall resign by giving written notice to Renaissance and Milwaukee. In the event of any such resignation, Renaissance and Milwaukee shall appoint a successor Escrow Agent and the Escrow Agent shall deliver to such successor Escrow Agent any escrow funds and other documents held by the Escrow Agent.

2.13     If the Escrow Agent reasonably requires other or further instruments in connection with this Escrow Agreement or obligations in respect hereto, the necessary parties hereto shall join in furnishing such instruments.

2.14     It is understood and agreed that should any dispute arise with respect to the delivery and/or ownership or right of possession of the documents or the escrow funds held by the Escrow Agent hereunder, the Escrow Agent is authorized and directed in the Escrow Agent's sole discretion (1) to retain in the Escrow Agent's possession without liability to anyone all or any part of said documents or the escrow funds until such disputes shall have been settled either by mutual written agreement of the parties concerned or by a final order, decree or judgment of a court of competent jurisdiction after the time for appeal has expired and no appeal has been perfected, but the Escrow Agent shall be under no duty whatsoever to institute or defend any such proceedings or (2) to deliver the escrow funds and any other property and documents held by the Escrow Agent hereunder to a state or Federal court having competent subject matter jurisdiction and located in Los Angeles County in accordance with the applicable procedure therefore.

2.15     Each of Renaissance and Milwaukee agree to indemnify and hold harmless the Escrow Agent and its partners, employees, agents and representatives from any and all claims, liabilities, costs or expenses in any way arising from or relating to the duties or performance of the Escrow Agent hereunder or the transactions contemplated hereby or by the Joint Participation Agreement other than any such claim, liability, cost or expense to the extent the same shall have been determined by final, unappealable judgment of a court of competent jurisdiction to have resulted from the gross negligence, fraud or willful misconduct of the Escrow Agent.

*Signature Page Follows*

- 4 -

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of date first written hereinabove.

**MILWAUKEE MCPHERSON LLC**

By: _____

Name:  Carlos Meza

Title:   CEO


**RENAISSANCE CAPITAL GROUP LLC**

By: _____

Name:  Robert Adams

Title:   Managing Director


ESCROW AGENT:

**STUBBS, ALDERTON & MARKILES, LLP**


By:_____

Name:

Title:   Partner

Schedule 1 to
Escrow Agreement

## ESCROW AGENT FEES

*Escrow Establishment Fee* .................................$3,000.00

*Transaction Fee (per transaction)* ......................... $250.00

**Exhibit X to**
**Escrow Agreement**

### RELEASE NOTICE

The UNDERSIGNED, pursuant to the Escrow Agreement, dated as of June __, 2012 among Renaissance Capital Group LLC, Milwaukee McPherson LLC (identified therein as "*Milwaukee*") and Stubbs Alderton & Markiles, LLP (the "*Escrow Agreement*"; capitalized terms used herein and not defined shall have the meaning ascribed to such terms in the Joint Participation Agreement), hereby notifies the Escrow Agent that the Release Condition set forth in the Escrow Agreement has been satisfied. Renaissance hereby authorizes and directs the release by the Escrow Agent of the Funds as described in the Escrow Agreement. This Release Notice shall be effective upon execution by Renaissance and Milwaukee.

IN WITNESS WHEREOF, the undersigned has caused this Release Notice to be duly executed and delivered as of this __ day of June, 2012.

**MILWAUKEE MCPHERSON LLC**

By: _____
Name: Carlos Meza
Title: CEO

**RENAISSANCE CAPITAL GROUP LLC**

By: _____
Name: Robert Adams
Title: Managing Director

<u>**Exhibit A**</u>

**Commitment Letter**

# RENAISSANCE CAPITAL GROUP

***2625 Townsgate Road, Suite 330, Westlake Village, CA 91361***
Tel: 805-379-2100 Fax: 805-435-3701
***Email: BobAdams@CapitalGroupWestlake.com***

June 14, 2012

Carlos Meza, CEO
Milwaukee McPherson LLC
850 Old Willow
Prospect Heights, IL 60070
Telephone: (312) 671-8205
Facsimile: (312) 276-4287
Electronic mail: Milwaukeemcphersonllc@gmail.com

**RE: <u>Renaissance COMMITMENT</u>**

Dear Mr. Meza:

RENAISSANCE CAPITAL GROUP, on behalf of itself, its subsidiaries, affiliates, and assigns ("***Renaissance***") hereby irrevocably commits to:

1. Make Funds in the amount of Five Million U.S. Dollars ($5,000,000) ("***Funds***") conditionally available for a permitted investment as further defined in that certain Joint Participation Agreement between Renaissance and Milwaukee McPherson LLC (identified therein as "***Milwaukee***") dated June 8, 2012 ("***JPA***"), provided such permitted investment does not place Renaissance*'s* Funds and Renaissance*'s* Account at any greater custodial or investment risk, or risk of identity theft than they enjoy in their own Bank account.

2. Direct the Bank to pay all net profits or returns from the Permitted Investment into a separate account, and provide that account with irrevocable instructions to pay the Milwaukee Returns, as defined in the JPA, by wire transfer of immediately available funds, to an account designated in writing by Milwaukee.

3. Renaissance hereby commits to a "second bite" provision, wherein, in the event the Milwaukee chosen investment should fail to perform for any reason, Renaissance shall make the Funds available for a similar transaction within one full year from the date of this letter, as further defined in the JPA. In the event that there has been a lapse in


EXHIBIT
DEFENSE
EXHIBIT 22

participation payments pursuant to Section 3.3 of the JPA, it shall not be necessary to make back participation payments, but only to resume the Participation Payments prior to initiating the "second bite" provision.

4. Subject to current availability, Renaissance hereby commits to make additional funds available for a similar transaction within one full year from the date of this letter, under similar terms as further defined in the JPA.

Renaissance further confirms that the Funds proffered are fully compliant as good, clean, legitimately earned or obtained, and of non-criminal, non-terrorist, non-drug related origin.

Sincerely,
**RENAISSANCE CAPITAL GROUP LLC**
a Nevada limited liability company

Robert Adams, Managing Director

**Exhibit X to**
**Escrow Agreement**

### RELEASE NOTICE

The UNDERSIGNED, pursuant to the Escrow Agreement, dated as of June 8, 2012 among Renaissance Capital Group LLC, Milwaukee McPherson LLC (identified therein as "*Milwaukee*") and Stubbs Alderton & Markiles, LLP (the "*Escrow Agreement*"; capitalized terms used herein and not defined shall have the meaning ascribed to such terms in the Joint Participation Agreement), hereby notifies the Escrow Agent that the Release Condition set forth in the Escrow Agreement has been satisfied. Renaissance hereby authorizes and directs the release by the Escrow Agent of the Funds as described in the Escrow Agreement. This Release Notice shall be effective upon execution by Renaissance and Milwaukee.

IN WITNESS WHEREOF, the undersigned has caused this Release Notice to be duly executed and delivered as of this 14th day of June, 2012.


### MILWAUKEE MCPHERSON LLC


By: _____
Name:  Carlos Meza
Title:   CEO


### RENAISSANCE CAPITAL GROUP LLC


By: _____
Name:  Robert Adams
Title:  Managing Director

# CREDIT SUISSE

000089148421#14/06/2012 11:35:24

## RENAISSANCE CAPITAL GROUP LLC

2625 TOWNSGATE RD. SUITE 330
WESTLAKE VILLAGE, CA  91361, USA

**EXTRAIT DE COMPTE COURANT**
$ 0.89148421  USD
IBAN : CH96 0483 5089 1484 2100 0

Date :  Zurich le 14 juin 2012

**PERIODE**
01.06.2012 au 14.06.2012

BIC : CRESCHZZ80A
CLEARING: 4835

| Date | Nature de l'opération | Débit | Crédit | Solde en USD | Valeur |
|------|----------------------|-------|--------|--------------|--------|
| 31.05.2012 | Solde | | | +7,155,000.39 | |
| 01.06.2012 | En compte | | 7,155,000.39 | | |
| 14.06.2012 | Solde intermédiaire | | 7,155,000.39 | | 14/06/12 |
| **14.06.2012** | **Nouveau Solde** | | | **+7,155,000.39 USD** | |

Un dépliant des tarifs applicable à compter du 1er janvier 2013
sur le prix de nos produits et services est joint à votre extrait
de compte. A défaut de sa réception, nous vous remercions
de prendre contact avec votre conseiller.

CREDIT SUISSE Private Banking AG
Paradeplatz 8
8001 Zurich
SWITZERLAND
Tel.  +41 44 333 44 44
Fax +41 44 334 90 10
www.credit-suisse.com

EXHIBIT
DEFENSE
EXHIBIT 23

$53,250.00                                                    June 19, 2012

## MILWAUKEE MCPHERSON/CARLOS MEZA

## PROMISSORY NOTE

FOR VALUE RECEIVED, Milwaukee McPherson LLC, an Illinois limited liability company, and Carlos Meza, personally (collectively, the "***Borrower***"), located at 850 Old Willow, Prospect Heights, IL 60070, hereby unconditionally promises to pay to the order of Renaissance Capital Group LLC, a Nevada limited liability company ("***Lender***"), and its successors, endorsees, transferees and assigns (together with Lender, "***Holder***"), the principal sum of FIFTY THREE THOUSAND TWO HUNDRED FIFTY UNITED STATES DOLLARS (US$53,250.00), as set forth below. The principal amount of this Note, and any accrued unpaid interest thereon, shall be due and payable in full on June 30, 2012 (the "***Maturity Date***") in the manner provided for in <u>Section 1</u> below; <u>provided</u>, <u>however</u>, that the Maturity Date shall be automatically extended until December 31, 2012 upon the request of Borrower and subject to the written consent of Holder (which consent will not be unreasonably withheld or conditioned) prior to the initial Maturity Date.

1.     **Interest**.   From and after the date hereof interest will accrue on the unpaid principal balance from time to time outstanding until the principal balance is paid in full, at a rate of twelve (12%) percent per annum (the "***Interest Rate***"). From and after the occurrence of an Event of Default (as defined below), interest shall accrue on any amounts past due hereunder (whether by acceleration, maturity or otherwise) at a rate of three percent (3%) per annum in excess of the Interest Rate otherwise payable hereunder. All such interest accruing on amounts past due hereunder shall be due and payable on demand. Interest shall be computed on the daily outstanding principal balance hereunder on the basis of a 360 day year, counting the number of actual days elapsed. Interest shall accrue from June 19, 2012 and be payable monthly with the first payment due thirty (30) days after the date hereof and so continuing monthly on the same day of the month.

2.     **Payment**.   All payments of principal, interest and all other amounts payable in respect of this Note shall be made by wire transfer in lawful money of the United States of America in immediately available Federal funds, to an account furnished to the Borrower in writing for that purpose at least two (2) business days prior to the payment date. The outstanding principal balance under this Note, together with all accrued but unpaid interest thereon shall be due and payable on the Maturity Date or on such earlier date on which the maturity hereof is accelerated pursuant to the provisions hereof. All payments of principal, interest and other amounts to be made by Borrower under this Note shall be made without any deduction, set-off or counterclaim whatsoever. If any payment of principal or interest on this Note is due on a day that is not a Business Day, such payment will be due on the next succeeding Business Day. "***Business Day***" means any day other than a Saturday, Sunday or legal holiday in the State of California.



EXHIBIT
DEFENSE
EXHIBIT 24

3. **Prepayment**. The Borrower may prepay this Note, in whole or in part. Any partial prepayment, shall not affect the obligation to continue to pay in full the amount of the payments hereunder until the entire unpaid principal balance hereof and any accrued interest hereon has been paid in full. Any such prepayment shall be applied first to interest and then to principal.

4. **Transfers**.

(a) This Note and all rights hereunder are transferable, in whole or in part, upon surrender of the Note with a properly executed assignment, in form reasonably acceptable to the Borrower, at the principal office of the Borrower.

(b) The Borrower will maintain a register containing the names and addresses of the registered Holders of this Note. Any registered Holder may change such registered Holder's address as shown on the Note register by written notice to the Borrower requesting such change.

(c) Until any transfer of this Note is made in the Borrower's Note register, the Borrower may treat the registered Holder as the absolute owner hereof for all purposes; provided, however, that if and when this Note is properly assigned in blank, the Borrower may (but shall not be required to) treat the bearer hereof as the absolute owner hereof for all purposes, notwithstanding any notice to the contrary.

5. **Transfer by Borrower**. The Borrower may not assign, and no person may assume, any of the obligations of the Borrower under this Note without the prior written consent of Holder, which consent may be granted or withheld in the Holder's sole discretion, and any attempt to do so without such consent shall be void.

6. **Excess Interest**. Notwithstanding any provision to the contrary contained in this Note, Borrower shall not be required to pay, and Holder shall not be permitted to collect any amount of interest in excess of the maximum amount of interest permitted by law ("***Excess Interest***"). If any Excess Interest is provided for or determined by a court of competent jurisdiction to have been provided for in this Note, then in such event: (1) the provisions of this paragraph shall govern and control; (2) Borrower shall not be obligated to pay any Excess Interest; (3) any Excess Interest that Holder may have received hereunder shall be, at Holder's option, applied as a credit against the outstanding principal balance of this Note or the accrued and unpaid interest (not to exceed the maximum amount permitted by law), or refunded to the payor thereof, or any combination of the foregoing; (4) the interest rate provided for herein shall be automatically reduced to the maximum lawful rate allowed from time to time under applicable law (the "***Maximum Rate***"), and this Note shall be deemed to have been and shall be, reformed and modified to reflect such reduction; and (5) Borrower shall not have any action against Holder for any damages arising out of the payment or collection of any Excess Interest. Notwithstanding the foregoing, if, for any period of time, interest on this Note is calculated at the Maximum Rate rather than the applicable rate under this Note, and thereafter the Maximum Rate exceeds the applicable rate, the rate of interest payable on this Note shall become the Maximum Rate until Holder shall have received the amount of interest which Holder would have received

2

during such period on this Note had the rate of interest not been limited to the Maximum Rate during such period.

       7.      **Events of Default; Remedies**.

           (a)    Events of Default. The occurrence of any of the following shall constitute an "***Event of Default***" hereunder:

           (i)    Default in the payment of the principal of the indebtedness evidenced by this Note or accrued interest thereon in accordance with the terms of this Note;

           (ii)    A default or event of default shall occur in respect of any of the other indebtedness of the Borrower that exceeds, in the aggregate, $250,000 and, if subject to a cure right, such default or event of default shall not be cured within the applicable cure period;

           (iii)    The Borrower shall be liquidated, dissolved, partitioned or terminated, or the charter thereof shall expire or be revoked; or

           (iv)    The Borrower (i) shall generally not pay or shall be unable to pay its debts as such debts become due, or (ii) shall make an assignment for the benefit of creditors or petition or apply to any tribunal for the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (iii) shall commence any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or (iv) shall have had any such petition or application filed or any such proceeding commenced against it that is not dismissed within thirty (30) days, or (v) shall indicate, by any act or intentional and purposeful omission, its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for it or a substantial part of its assets, or (vi) shall suffer any such custodianship, receivership or trusteeship to continue undischarged for a period of thirty (30) days or more.

           (b)    Notice by Borrower. Borrower will notify Holder in writing within five (5) days after the occurrence of any Event of Default of which Borrower acquires knowledge. If Holder is not so notified, said failure to notify is, in and of itself, a default.

           (c)    Acceleration of Maturity; Remedies. Upon the occurrence of any Event of Default, the indebtedness evidenced by this Note shall be immediately due and payable in full. Upon the occurrence of any such Event of Default and the acceleration of the maturity of the indebtedness evidenced by the Note:

           (i)    the Holder shall be immediately entitled to exercise any and all rights and remedies possessed by Holder pursuant to the terms of this Note; and

           (ii)    the Holder shall have any and all other rights and remedies that the Holder may now or hereafter possess at law, in equity or by statute.

    (d)   <u>Remedies Cumulative; No Waiver</u>. No right, power or remedy conferred upon or reserved to Holder by this Note is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law, in equity or by statute. No delay or omission by the Holder to exercise any right, power or remedy accruing upon the occurrence of any Event of Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such Event of Default or an acquiescence therein, and every right, power and remedy given by this Note to the Holder may be exercised from time to time and as often as may be deemed expedient by the Holder.

    8.    <u>**Collateral Agreement**</u>. This Note and the obligations of the Borrower hereunder are guaranteed by a stand-by letter of credit in a form and from a financial institution acceptable to Lender. All of Holder's rights and remedies hereunder and thereunder are cumulative.

    9.    <u>**Notices**</u>. Any notice required by the provisions of this Note to be given to the Holder shall be delivered personally, telecopied, or sent by certified mail or overnight via nationally recognized courier service (such as Federal Express), addressed to Holder at the address appearing on the books of the Borrower. The date of personal delivery or telecopy or two (2) business days after the date of mailing (or the next business day after delivery to such courier service), as the case may be, shall be the date of such notice.

    10.    <u>**Governing Law**</u>. THIS NOTE SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, AND SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF CALIFORNIA, UNITED STATES OF AMERICA, WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THEREOF.

    11.    <u>**Waiver of Jury Trial**</u>. EACH OF THE BORROWER AND THE HOLDER WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS OR REMEDIES HEREUNDER OR RELATING HERETO.

    12.    <u>**Waivers**</u>. The Borrower waives presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, and the Borrower agrees that its liability shall be unconditional, without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by the Holder.

    13.    <u>**Amendments**</u>. All amendments to this Note, and any waiver or consent of Holder, must be in writing and signed by Holder and Borrower.

    14.    <u>**Attorneys Fees**</u>. The Borrower promises to pay all reasonable costs and expenses, including attorneys' fees, incurred in the collection and enforcement of this Note, including, without limitation, enforcement before any court and including all appellate proceedings, whether or not suit is filed.

15.      **Time**.  Time is of the essence in the performance of this Note.

16.      **Binding Effect**.  This Note inures to and binds the heirs, successors and assigns of Borrower and Holder.

17.      **Severability**.  Wherever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note and shall be interpreted so as to be effective and valid.

IN WITNESS WHEREOF, the Borrower has executed and delivered this Note as of the day and year and at the place first written above.


                         **MILWAUKEE MCPHERSON LLC**
                         an Illinois company


                         By:      _____
                         Name: Carlos Meza

                         Title:   CEO


                         **CARLOS MEZA, Personally**


                         Signature:_____

5

# CREDIT SUISSE

0000040988434#4/8/13 9:38:24 AM

**RENAISSANCE CAPITAL GROUP LLC**

2625 TOWNSGATE RD. SUITE 330
WESTLAKE VILLAGE, CA 91361, US

**ACCOUNT SUMMARY**
**ACC. NUMBER : 0409884-34  USD**
**IBAN : CH60 0483 5040 9884 3400 0**

Date : Zurich April 8, 2013

**STATEMENT PERIOD**
**01.04.2013 au 08.04.2013**

**BIC : CRESCHZZ80A**
**CLEARING: 4835**

| Date | Transactions | Paid out | Paid in | Balance | Value date |
|------|-------------|----------|---------|---------|------------|
| 31.03.2013 | Opening Balance | | | +25'109'030.18 | |
| 01.04.2013 | Balance Brought Forward | | 25'109'030.18 | | |
| 08.04.2013 | Balance Carried Forward | | 25'109'030.18 | | 4/8/13 |
| **08.04.2013** | **Closing Balance** | | | **+25'109'030.18 USD** | |

Fees: We may not be able to grant every request you make for an overdraft. Where we decline an informal overdraft request we will not charge arrangement Fee but a Return Fee will be payable. Arrangement Fees and Return Fees are also accrued during your charging cycle (usually monthly) and deducted from your account following the end of your charging cycle. Before we deduct debit interest, arrangement fees and/or return fees, we will give you at least 14 days notice of the amount to be deducted.



CREDIT SUISSE Private Banking AG
Paradeplatz 8
8001 Zurich
SWITZERLAND
Tel. +41 44 333 99 11
Fax +41 44 332 55 55
www.credit-suisse.com

Page 1 de 1



EXHIBIT
DEFENSE
EXHIBIT 25

PROMISSORY NOTE

$50,000.00                          Date: September 19, 2012

- For value received, the undersigned Milwaukee McPherson LLC (the "Borrower"), at 860 Old Willow Rd, #232 Prospect Heights, Illinois 60070, promises to pay to the order of Cordell Crane (the "Lender"), resident of 1580 Driftwood Ct Crystal Lake, IL 60014. (Or at such other place as the Lender may designate in writing) the sum of $50,000.00 with interest from September 19, 2012 on the unpaid principal at the rate of 9% per annum.

Unpaid principal after the Due Date shown below shall accrue interest at a rate of 12% annually until paid.

The unpaid principal and accrued interest shall be payable in annual installments of interest only beginning on September 19, 2012, and continuing until September 18, 2014, (the "Due Date"), at which time the remaining unpaid principal and interest shall be due in full.

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal. Any accrued interest not paid during the term of the loan should become part of the principal.

The Borrower understands that the lender reserves all rights and privileges as these funds are being used to pay Milwaukee McPherson LLC day to day opeations. The property located at 6152 N. Ravenswood 1E Ave.Chicago IL 60660 is collateral if Borrower fails to paid principal.. Lender may use rights to enforce against property to secure and enforce the repayment.

The Borrower promises to pay a late charge of $100.00 for each installment that remains unpaid 10 day(s) after its Annual Date. This late charge shall be paid as liquidated damages in lieu of actual damages, and not as a penalty.

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, whether or not a lawsuit is commenced as part of the collection process. Borrower should reimburse Lender for all Attorneys' fees paid to recover the principle of this note.

This Note is secured by 6152 N. Ravenswood 1E Ave.Chicago IL 60660. The Lender is not required to rely on the above security instrument and the assets secured therein for the payment of this Note in the case of default, but may proceed directly against the Borrower.


EXHIBIT
DEFENSE
EXHIBIT 26

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender shall become due immediately, without demand or notice:

1) The failure of the Borrower to pay the principal and any accrued interest in full on or before the Due Date;

2) The Death of the Borrower or Lender;

3) The application for the appointment of a receiver for the Borrower;

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition of any assets pledge as security for the payment of this Note, or if there is a default in any security agreement which secures this Note.

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

No renewal or extension of this Note, delay in enforcing any right of the Lender under this Note, or assignment by the Lender of this Note shall affect the liability or the obligations of the Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

TO INDUCE LENDER TO ACCEPT THIS NOTE, BORROWER, IRREVOCABLY, AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THIS NOTE SHALL BE LITIGATED IN COURTS HAVING SITUS WITHIN THE CITY OF CHICAGO, STATE OF ILLINOIS. BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SAID CITY AND STATE. BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRASNFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT AGAINST BORROWER BY LENDER IN ACCORDANCE WITH THIS PARAGRAPH.

Signed this 19th of September, 2012

Borrower:
Milwaukee McPherson LLC

By: _____

Lender:
By: _____
        Cordell Crane