

**FILED**

**DEC 06 2018**

**JUDGE ELAINE E. BUCKLO
UNITED STATES DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   17 CR 281 |
| v. | ) | |
| | ) | |
| CARLOS R. MEZA | ) | <u>INDICTMENT</u> |

<u>COUNT ONE</u>

1.  At times relevant to this indictment:

    a.  Defendant CARLOS R. MEZA was a resident of the Northern District of Illinois.

    b.  MEZA maintained and had signatory authority over a bank account in the name of Milwaukee McPherson, LLC, at PNC Bank.

2.  From in or about 2012 until in or about 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS R. MEZA,

defendant herein, devised, intended to devise, and participated in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme is further described below.

3.  It was part of the scheme that MEZA solicited funds from friends and associates, including persons whom he had befriended at a church he regularly attended, to invest with him in various trading programs from which he intended to

profit. MEZA relied in part on their shared religious beliefs and friendship to gain their trust and confidence.

4. It was further part of the scheme that MEZA misled potential investors about his financial background and wealth in order to fraudulently induce them to participate with him in certain investments. At times, MEZA falsely portrayed himself as a successful, wealthy real estate investor and businessman in the trucking industry, making false statements such as:

    a. that he was a multi-millionaire;

    b. that he owned multiple properties in Chicago;

    c. that he had millions of dollars in South America; and

    d. that he owned 100 road construction trucks.

5. It was further part of the scheme that MEZA misled potential investors about his level of knowledge of the nature and legitimacy of the investments for which he was soliciting funds, the traders who would be handling the investments, the amount of risk involved, and the timing and rate of return on the investments. MEZA repeatedly made materially false promises and guarantees about the purported investments, without disclosing that he in fact had no personal knowledge or understanding of the nature of the investments, that he had no expertise and experience in securities trading, and that he had no personal knowledge of or direct connection to the traders who supposedly would be handling the investors' funds. Among the materially false promises and guarantees made by MEZA to potential investors were the following:

      a.    that their money would be invested in low-risk, high-return investments;

      b.    that their investment funds would be safe; and

      c.    that they would receive multi-million-dollar returns on their investments within certain short-term periods of time (within weeks or months).

6.    It was further part of the scheme that MEZA fraudulently induced multiple victims, including Victim A and Victim B, to entrust their money to him and to others based on the materially false promises, representations, guarantees, and omissions of material fact described above.

7.    It was further part of the scheme that MEZA instructed victims to wire-transfer their investment funds to bank accounts controlled by him and others, including his Milwaukee McPherson account at PNC Bank.

8.    It was further part of the scheme that MEZA fraudulently disposed of at least some of the funds entrusted to him by Victim A and Victim B, converting tens of thousands of dollars of their money to his own use by paying personal debts and expenses with their money, without their knowledge and consent. For example:

      a.    On or about May 25, 2012, MEZA used more than $28,000 of Victim A's money to repay a personal loan owed by MEZA.

      b.    On or about May 30, 2012, MEZA used more than $20,000 of Victim A's money to purchase a vehicle for himself.

      c.    On or about September 19, 2012, MEZA used approximately $47,500 of Victim B's money to repay a personal loan owed by MEZA.

9. It was further part of the scheme that MEZA did not invest or repay victim funds.

10. It was further part of the scheme that MEZA concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts done in furtherance of the scheme

11. As result of MEZA's false and fraudulent acts, and his concealment of material facts, Victim A, Victim B, and others incurred financial losses.

12. On or about May 16, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS R. MEZA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds in the amount of approximately $200,000 from Victim A's bank account at American Chartered Bank to MEZA's Milwaukee McPherson bank account at PNC Bank, through the Fedwire Funds Service network;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

1. Paragraphs 1 through 11 of Count One of this indictment are incorporated here.

2. On or about September 19, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

CARLOS R. MEZA,

defendant herein, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate transfer of funds in the amount of approximately $50,000 from Victim B's bank account at JP Morgan Chase Bank to MEZA's Milwaukee McPherson bank account at PNC Bank, through the Fedwire Funds Service network;

In violation of Title 18, United States Code, Section 1343.